UNITED STATES, Appellee

v.

Patricia C. PHILLIPS, Lieutenant Colonel
U.S. Air Force, Appellant

No. 02-0657

Crim. App. No. 34147

United States Court of Appeals for the Armed Forces

Argued February 5, 2003

Decided May 13, 2003


CRAWFORD, C.J., delivered the opinion of the Court, in
which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.


Counsel

For Appellant: Lieutenant Colonel Brandon Burnett (argued);
Colonel Beverly B. Knott, Major Kyle R. Jacobson, and Major
Terry L. McElyea (on brief); Major Jeffrey A. Vires.

For Appellee: Captain C. Taylor Smith (argued); Lieutenant
Colonel LeEllen Coacher and Lieutenant Colonel Lance B. Sigmon
(on brief); Colonel Anthony P. Datillo and Lieutenant Colonel
William B. Smith.

Military Judge: William E. Orr, Jr.


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to her pleas, Appellant was convicted of making a false official statement, wrongfully using marijuana, and conduct unbecoming an officer by seeking a substitute urine sample, in violation of Articles 107, 112a, and 133, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 907, 912a, and 933 (2000). The convening authority approved a sentence of dismissal and confinement for 45 days. The Air Force Court of Criminal Appeals affirmed the findings and sentence, United States v. Phillips, 56 M.J. 843 (A.F. Ct. Crim. App. 2002), and we granted review of the following issue:

> WHETHER A COURT-MARTIAL HAS IN PERSONAM JURISDICTION
> OVER A RESERVIST'S CONDUCT THAT OCCURS ON A TRAVEL DAY
> PRECEDING HER ANNUAL ACTIVE-DUTY TOUR.

For the reasons set forth below, we affirm.

## FACTS

At trial, as on appeal, Appellant contended that the armed forces did not have personal jurisdiction over her at the time of one of the three offenses of which she was convicted – the charge of wrongful use of marijuana "at or near Wright-Patterson Air Force Base, Ohio, between on or about 11 July 1999 and on or about 16 July 1999." Appellant has not challenged jurisdiction over the remaining offenses. In the course of rejecting Appellant's motion, the military judge identified the following as uncontested facts:

2

Lieutenant Colonel Patricia C. Phillips is a member of the United States Air Force Reserve and has been a member of the Reserve since 28 April of 1989, without a break in service. During all the times relevant, Lieutenant Colonel Phillips was a member of the Air Force Reserves.

Lieutenant Colonel Phillips was assigned as a reservist to the 9019th Air Reserve Squadron, Denver, Colorado, as an Individual Mobilization Augmentee. As an IMA, Lieutenant Colonel Phillips is attached to the 74th Medical Group, Wright-Patterson Air Force Base, Ohio. Pursuant to Reserve Order JA 17747, dated 24 June 1999, Lieutenant Colonel Phillips was ordered to perform her annual tour. The orders required Lieutenant Colonel Phillips to report to duty at 0730 hours on 12 July 1999, and to be released on 23 July 1999. Lieutenant Colonel Phillips departed Pittsburgh, Pennsylvania at 1200 hours on 11 July 1999 and arrived at Wright-Patterson Air Force Base, Ohio at 1630 hours on 11 July 1999.

Pursuant to Reserve Orders JA 17747, one-day travel was authorized on 11 July 1999. Lieutenant Colonel Phillips received one point in travel pay for 11 July 1999. Additionally, she received base pay, basic allowance for quarters, and basic allowance for subsistence for 11 July 1999. Lieutenant Colonel Phillips reported for duty at 0630 hours on 12 July and was released from duty on 1530 hours on 23 July 1999.

During the week of 12 July 1999, Lieutenant Colonel Phillips was selected for random urinalysis. She provided a sample. The sample tested positive for tetrahydro-cannabinol, with a THC level of 148 nannograms per milliliter. The alleged drug use occurred on 11 July 1999, after she arrived at Wright-Patterson Air Force Base, Ohio.

After the military judge denied the jurisdictional motion, Appellant entered a plea of guilty. During the plea inquiry, Appellant agreed to the admission into evidence of a stipulation of fact, which contained detailed information about the

circumstances of her offenses, including the following

information regarding the use of marijuana:

> On 11 July 1999, the Accused drove from her home in Pittsburgh, Pennsylvania, to Wright-Patterson Air Force Base, Ohio, where she checked into lodging at the Wright-Patterson Air Force Base Visiting Officers' Quarters (VOQ) that same day.  On her trip to Wright-Patterson Air Force Base, Ohio, the Accused brought with her three brownies containing marijuana.  On 11 July 1999, after checking in to her VOQ, the Accused ate the marijuana brownies in her VOQ on Wright-Patterson Air Force Base, Ohio.  At the time she consumed the brownies, the Accused knew that the brownies contained marijuana, that substance she was consuming was marijuana, and that she had no legal justification or authority to use marijuana at the time she used it.  The Accused knew the brownies contained marijuana because the Accused had previously purchased the marijuana on a street corner in Pittsburgh, Pennsylvania and because she subsequently made the marijuana brownies herself, for her own use and consumption.

The stipulation also described selection at random to

participate in the drug-testing program on July 16, her

unsuccessful attempt on July 16 to persuade another officer to

provide a substitute urine sample, her provision of the sample,

and the subsequent positive test result.

> During the military judge's personal colloquy with

Appellant during the plea inquiry, Appellant added:

> On the 11th of July I drove from Pittsburgh, Pennsylvania to Wright-Patterson Air Force Base for my active-duty tour and I brought marijuana on base.  I checked in, I ate those brownies on the 11th of July, and I reported to duty at seven-thirty, July 12, 1999.

4

In response to a question from the military judge, Appellant confirmed that she consumed the marijuana on base in the Visiting Officers' Quarters. Other uncontested evidence submitted during trial demonstrated that Appellant, who was born in 1951, entered the Air Force in 1989, was successively promoted to Lieutenant Colonel, and met mental and minimum age qualifications under 10 U.S.C. §§ 504 and 505 (2000).

## DISCUSSION

"Court-martial jurisdiction exists to try a person as long as that person occupies a status as a person subject to the [UCMJ]." United States v. Ernest, 32 M.J. 135, 139 (C.M.A. 1991). See also Solorio v. United States, 483 U.S. 435 (1987). "Status in the armed forces for purposes of court-martial jurisdiction is generally governed by Article 2 [of the UCMJ]." United States v. Cline, 29 M.J. 83, 85 (C.M.A. 1989)(citing United States v. Cole, 24 M.J. 18 (C.M.A. 1987)). Article 2(c), UCMJ, 10 U.S.C. § 802(c)(2000), states:

> Notwithstanding any other provision of law, a person serving with an armed force who--
>
> (1) submitted voluntarily to military authority;
>
> (2) met the mental and minimum age qualifications of sections 504 and 505 of this title at the time of voluntary submission to the military authority;
>
> (3) received military pay or allowances; and
>
> (4) performed military duties;

5

> is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned.

The foregoing provision was added to Article 2 in 1979. Department of Defense Authorization Act, 1980, Pub. L. No. 96-107, § 801, 93 Stat. 803, 811 (1979).  The legislative history indicates that the amendment was primarily enacted to ensure that court-martial jurisdiction would not be defeated by assertions that military status was tainted by recruiter misconduct.  See S. Rep. No. 96-197, at 121-22 (1979).  The legislative history also makes it clear that the four-part test for active service applies to circumstances –- such as those present in United States v. King, 11 U.S.C.M.A. 19, 28 C.M.R. 243 (1959) -- not involving defective enlistments.  S. Rep. No. 96-197, at 122.  In describing the scope of the legislation, the Senate Report observed:

> The new subsection is not intended to affect reservists not performing active service or civilians. It is intended only to reach those persons whose intent it is to perform as members of the active armed forces and who met the four statutory requirements. It thus overrules such cases as United States v. King, [supra].  An individual comes within new Subsection (c) whenever he meets the requisite four-part test regardless of other regulatory or statutory disqualification.

Id. at 122-23.

The statute, by its express terms, establishes a specific analytical framework.  First, the person must be "serving with

an armed force" at the pertinent point in time.  The phrase "serving with" an armed force has been used to describe persons who have a close relationship to the armed forces without the formalities of a military enlistment or commission.  See Article 2(10), UCMJ; Article XXXII, American Articles of War of 1775, reprinted in William Winthrop, Military Law and Precedents 956 (2d ed. 1920).  The question of whether a person is "serving with" the armed forces is dependent upon a case-specific analysis of the facts and circumstances of the individual's particular relationship with the military, and means a relationship that is more direct than simply accompanying the armed forces in the field.  See, e.g., United States v. Garcia, 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954); United States v. Schultz, 1 U.S.C.M.A. 512, 4 C.M.R. 104 (1952).

Second, the statute provides that a person serving with the armed forces also must meet the four-part test.  Merely serving with the armed forces as a reservist or a civilian is not sufficient to establish jurisdiction under Article 2(c).  Compare Articles 2(a)(3), 2(d) (jurisdiction over reservists not on active duty in specified circumstances).

Finally, the statute provides that once a person meets the four-part test, the individual retains status as a person in "active service," see 10 U.S.C. § 101(d)(3), until released under applicable laws and regulations.

Applying the first step of the analysis to the present case, Appellant's status as a person "serving with" the armed forces on July 11, 1999, is established by the following uncontested facts: (1) on that day, she was a member of a reserve component of the armed forces; (2) she traveled to a military base on that day pursuant to military orders, and she was reimbursed for her travel expenses by the armed forces; (3) the orders were issued for the purpose of performing active duty; (4) she was assigned to military officers' quarters, she occupied those quarters, and she committed the pertinent offense in those quarters; (5) she received military service credit in the form of a retirement point for her service on that date; and (6) she received military base pay and allowances for that date.

In terms of the second step of the analysis, Appellant's status on July 11 as a person in active service under the four-part test in Article 2(c) is established by the following uncontested facts: (1) Appellant submitted voluntarily to military authority; (2) Appellant's date of birth and record of service reflected that there was no issue as to whether she met the mental and minimum age qualifications under 10 U.S.C. §§ 504 and 505 (2002); (3) as noted in connection with the first step, she received military pay and allowances for her service on that date; and (4) her military duty on that day, which she voluntarily agreed to perform, was to travel to the base

preparatory to report to a specific organization on July 12. She performed that duty.  The fact that her orders did not require her to report to a specific organization until July 12 does not detract from her voluntary performance of the duty, pursuant to orders, to travel on July 11.  Finally, it is uncontested that during the period in question, she was not released pursuant to law or regulation.

Under these circumstances, Appellant was subject to military jurisdiction on the day of travel to her active-duty site at the time of her offense.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.