# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Jay D. COKER
### Lieutenant Junior Grade (O-2), U.S. Coast Guard Reserve

## CGCMG 0231

## Docket No. 1280

## 21 November 2008

General Court-Martial convened by Commander, First Coast Guard District. Tried at Boston, Massachusetts, on 20-21 December 2006.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | CDR Luke M. Reid, USCG |
| Assistant Trial Counsel: | LT Lisa M. LaPerle, USCGR |
| Defense Counsel: | LT James M. Toohey, JAGC, USN |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR Patrick M. Flynn, USCG |

## BEFORE
## McCLELLAND, PEPPER & McGUIRE
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: two specifications of attempt to commit indecent liberties with a child, in violation of Article 80, Uniform Code of Military Justice (UCMJ); one specification of fraudulent appointment, in violation of Article 83, UCMJ; one specification of assault consummated by a battery against a child, in violation of Article 128, UCMJ; two specifications of conduct unbecoming an officer, in violation of Article 133, UCMJ; and four specifications of indecent acts or indecent liberties with a child, one specification of violating 18 U.S.C. § 2252A by receiving child pornography, and one specification of kidnapping, all in violation of Article 134, UCMJ. The military judge sentenced Appellant to dismissal from the Coast Guard, total forfeitures, and confinement for thirty years, against which he ordered credit for 132 days of pretrial confinement. The Convening Authority

approved the sentence as adjudged, suspended the confinement in excess of twelve years until six months after Appellant is released from confinement, pursuant to the pretrial agreement, and applied 132 days of pretrial confinement credit against the approved confinement in accordance with *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

Before this Court, Appellant has assigned the following errors:

I.      The court-martial did not have jurisdiction over Charge I, Specification 2, or over Charge V, Specification 7, because Appellant was not on active duty when those offenses were committed; he had received notice of intent to release him from active duty, and his final pay was ready for delivery.

II.     Appellant's pleas are improvident because the military judge failed to ensure Appellant understood the meaning of the sex offender provision in his pretrial agreement.

We discuss both issues and affirm.

## Jurisdiction

Appellant was convicted of misconduct on eight separate occasions involving six different four- and five-year-old boys.  One of the occasions occurred on 4 August 2006.  Appellant was a reserve officer on an extended active duty contract, under which his last day of active duty was supposed to be 3 August 2006.

The facts relevant to this issue, as found by the military judge and recorded in the second Appellate Exhibit XIII, are as follows.  Appellant was commissioned an officer in the Coast Guard Reserve and entered upon an extended active duty agreement beginning 4 August 2003 and ending 3 August 2006.  His request to extend on active duty was approved; his active duty was extended by twenty-three months.  However, in May 2006 he requested to be released from the new obligation and his request was approved.  A Separation Authorization was issued on 29 June 2006, establishing his last day of active duty as 3 August 2006, after which he would be in the Individual Ready Reserve.  The Separation Authorization directed Appellant to comply with medical requirements, complete required security briefings, and turn in his government travel charge card.  These requirements were reflected on a local check-out sheet, which is to be initialed by various staff personnel listed thereon.  There is no evidence that Appellant completed a check-out sheet.  Under local procedures, Appellant should not have received his DD-214 until he had completed a

check-out sheet. Nevertheless, he did receive his DD-214 from a petty officer in the servicing personnel office on 3 August 2006. The DD-214 showed a separation date of 3 August 2006.

In preparing for his release from active duty, Appellant elected to be paid his unused leave and to travel by personally owned conveyance, communicating this and other necessary information to his servicing personnel office by means of an "intentions worksheet." Based on this information, the servicing personnel office informed Coast Guard Personnel Service Center (PSC) on 2 August 2006 that Appellant was leaving active duty the following day and wanted to sell back fifty-five days of leave. At that point, PSC had all the information needed to calculate Appellant's final pay. The software system makes calculations automatically twice a month. Appellant's final pay calculation occurred on 8 August 2006.

Appellant was entitled to four days of travel time. Allowable travel time is considered active duty for all purposes normally ascribed to active duty.[1] This includes entitlement to active duty pay and allowances, with exceptions not pertinent here.

Appellant argues that he had been separated on 3 August 2006 and therefore there was no court-martial jurisdiction to try him for alleged offenses occurring on 4 August 2006.

10 U.S.C. § 1168(a) provides, "A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative." This statute governs the question of when a person has been discharged for the purpose of court-martial jurisdiction. *United States v. Hart*, 66 M.J. 273, 275 (C.A.A.F. 2008).[2]

---

[1] This statement is quoted verbatim from two Coast Guard directives: the Coast Guard Pay Manual, COMDTINST M7220.29A, chapter 2 paragraph K.3.c.(1); and the Reserve Policy Manual, COMDTINST M1001.28A, paragraph 3.B.5.b. We take judicial notice that Attachment T to Appellate Exhibit VII, which is not identified, is a copy of chapter 2 of the Pay Manual. Attachment V to Appellate Exhibit VII is a copy of chapter 3 of the Reserve Policy Manual.

[2] *Hart* and the cases cited therein address the question of personal jurisdiction to try the accused by court-martial. This case presents a question of subject matter jurisdiction over certain offenses; jurisdiction to try Appellant is not contested. We believe 10 U.S.C. § 1168 governs both questions.

We first consider the certificate of release from active duty (DD-214). Having found that Appellant's DD-214 had been delivered to him on 3 August 2006, the military judge nevertheless concluded that this delivery was not effective because the person who delivered it did not have authority to do so since Appellant had not completed the check-out process. (Second Appellate Exhibit XIII.) We find this conclusion flawed, as there is nothing to indicate that the Separation Authorization requirements or the check-out sheet constituted or reflected conditions upon the validity of the date on the DD-214. This case contrasts with *United States v. Harmon*, 63 M.J. 98, 102 (C.A.A.F. 2006), *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000), and *United States v. Batchelder*, 41 M.J. 337, 339 (C.A.A.F. 1994), in each of which there was a written statement accompanying the DD-214 or a service regulation or both, making the discharge effective at 2359 or 2400 on the date of the DD-214, which governed instead of the earlier delivery time. We have no evidence of a service regulation conditioning a release from active duty upon certain check-out requirements, or of any statement to Appellant advising him that his DD-214 was ineffective until he completed the check-out process.

But there is more to say about the DD-214. Given the military judge's finding that Appellant was entitled to four days of travel time, which is supported by the record and is not clearly erroneous, it appears that the DD-214 he was given was incorrect in showing a separation date of 3 August 2006; it should have shown a separation date of 7 August 2006. COMDTINST M1900.4D, chapter 1 section E. Block 12b ("[For] Reservists entitled to travel time incident to separation, construct the effective date to include travel time and enter that date in this block.").[3] Is this a basis for finding the DD-214 ineffective?[4] No doubt the DD-214 was voidable, but was it void?

The Government argues that delivery of an erroneous DD-214 showing an incorrect separation date of 3 August 2006 should not terminate jurisdiction. We find it unnecessary to resolve this issue in view of the matter of Appellant's final pay.[5]

---

[3] Attachment U to Appellate Exhibit VII is a copy of COMDTINST M1900.4D, Certificate of Release or Discharge from Active Duty, DD Form 214.

[4] The erroneous date may have been to Appellant's detriment, as it implied termination of his pay despite the principle cited above that allowable travel time is considered active duty for all purposes ascribed to active duty, including the entitlement to active duty pay and allowances. See footnote 1 and accompanying text.

[5] The Government also argues alternatively for court-martial jurisdiction based on Article 2(c), UCMJ, citing *United States v. Phillips*, 58 M.J. 217 (C.A.A.F. 2004). We reject this argument because there is no evidence that Appellant

The military judge found that the payroll software system automatically calculated Appellant's final pay on 8 August 2006, and that the communication from the servicing personnel office on 2 August 2006 provided all the information the system needed to calculate that pay. (Second Appellate Ex. XIII at 2-3.) These findings are supported by the record and are not clearly erroneous. He then concluded that this meant Appellant's final pay or a substantial portion of it was ready for delivery. (Second Appellate Ex. XIII at 4.) With the clarity provided by *United States v. Hart*, 66 M.J. 273 (C.A.A.F. 2008), we reject this conclusion. The appellant in *Hart* argued that once the finance office had all the information they needed to compute the final pay, it was ready for delivery within the meaning of 10 U.S.C. § 1168(a). The Court of Appeals for the Armed Forces (CAAF) held otherwise. In *Hart*, additional steps by finance technicians were required before final pay could be issued. *Id.* CAAF concluded "that neither final pay nor a substantial part of that pay were ready for delivery within the meaning of the plain language of 10 U.S.C. § 1168(a)." *Hart*, 66 M.J. at 276. Likewise in this case, according to the military judge's findings, additional time was required before final pay could be issued.[6] The calculation was not performed until 8 August 2006, and the final pay would have been deposited to Appellant's bank account on the mid-month payday. To say that final pay was ready for delivery on 3 August 2006 when it was not going to be paid until more than a week later would surely ring hollow to a separating servicemember, and just as surely does not meet the plain language of 10 U.S.C. § 1168(a).

Since no part of Appellant's final pay was ready for delivery on 3 August 2006, he was not truly released from active duty on that date, and his actions on 4 August 2006 could provide the basis for charges against him at a court-martial.

---

performed military duties on 4 August 2006. The notion that he performed military duties by attending Coast Guard Day festivities, which are attended by retirees, civilians and dependents, as well as active duty personnel, is fanciful.

[6] The military judge also found that an additional step was required, in that CWO Shepler, the PSC branch chief responsible for the final pay of members separating from the Coast Guard, would have to make contact with the Treasury Department to make the payment. This was clearly erroneous, as CWO Shepler testified that such an offline payment process was necessary to ensure a separating member would receive their final pay on the date of separation, but that Appellant was scheduled to receive his final pay in the regular course of a future payday. This makes no difference to the analysis, as that finding of fact was not necessary to the military judge's conclusions of law and neither it nor its opposite is necessary to ours.

**Sex Offender Treatment Term of Pretrial Agreement**

A provision of Appellant's pretrial agreement with the Convening Authority reads, "I further agree to enroll in and successfully complete the sex offender treatment program available to me, wherever confined, to the extent I am sentenced to confinement sufficient for enrollment in, and completion of, the sex offender treatment program." (Appellate Ex. IX, ¶ d.) At trial, the military judge's explication of this provision was limited to the following: "If you are, in fact, confined to a length of time that would be sufficient for you to complete the sex offender treatment program, then you're agreeing to enroll in it. Do you understand that?" Appellant responded in the affirmative. (R. at 218.)[7]

Under the pretrial agreement, if Appellant fails to comply with the agreement, including the sex offender treatment term, the Convening Authority has the right to "vacate any periods of suspension" of a sentence component. (Appellate Ex. IX, ¶¶ 12, 15.)

In a case involving a pretrial agreement, the military judge must conduct an inquiry, including an explanation of each material provision, to ensure that the accused understands the agreement and agrees to it, and that any ambiguities are clarified so that the parties share a common understanding of the agreement. Rule for Courts-Martial (R.C.M.) 910(f), Manual for Courts-Martial, United States (2005 ed.); *United States v. Green*, 1 M.J. 453 (C.M.A. 1976); *United States v. Felder*, 59 M.J. 444 (C.A.A.F. 2004).

Appellant now suggests that enrollment will likely require some sort of agreement to follow treatment guidelines and perhaps waive some rights, but that such conditions on enrollment, as well as requirements for completion of the treatment, went unexplored by the military judge. Appellant therefore suggests that this Court should hold the sex offender treatment provision unenforceable against him, citing *United States v. Cockrell*, 60 M.J. 501 (C.G.Ct.Crim.App. 2004).

Appellant has also moved this Court "to order the United States to provide a copy of any agreement or waiver that has been signed by Appellant, or will be required to be signed by Appellant, relating to the sex offender treatment that is the subject of [¶ d.] of his pretrial

agreement." Appellant asserts that documents so produced "will explain what it is that Appellant is required to do, and what rights he is required to waive, in order to participate in the sex offender treatment program."

Prosecution Exhibit 4, a description of the Sex Offender Treatment Program at Naval Consolidated Brigs, was stipulated to at trial. (R. at 384, 388-89.) It states that prior to acceptance into the Sex Offender Treatment Program, an individual must admit some responsibility and be willing to discuss his behavior in detail, and must "agree to follow program guidelines specified in a Program Agreement." (Prosecution Ex. 4 at 1.) Appellant is confined at the U.S. Disciplinary Barracks, according to the Convening Authority's action as well as Appellant's brief. Appellate defense counsel avers that a program agreement is also a condition of treatment at the Disciplinary Barracks. Similar features of the treatment program likely to be relevant to Appellant can be found in the affidavit, attached to Appellant's assignment of errors and brief, by the Director of Treatment Programs at the Disciplinary Barracks, which states that inmate eligibility for treatment "must include acceptance of responsibility"; the first phase of sex offender treatment, consisting of fifteen sessions, focuses on "evaluat[ing] the inmate's motivation for further intensive treatment." (Defense Br., Appendix A at 3.)[8]

One might posit that the terms of such a program agreement are present, though submerged, in the pretrial agreement. If so, arguably they must be part of the inquiry required under R.C.M. 910(f). We believe an adequate inquiry can be conducted without a copy of the program agreement, using summarized information such as that contained in Prosecution Exhibit 4 or the affidavit. For that reason, Appellant's motion for production of the agreement is denied. However, to the extent that obligations associated with enrollment in the treatment program went wholly unmentioned during the trial, it could not be said that there was an adequate inquiry into the sex offender treatment provision of the pretrial agreement.

---

[7] It may be noted that the military judge's question omitted mention of the "and successfully complete" portion of the provision. The Government "concedes that the Convening Authority should be precluded [from] taking action against Appellant for failure to 'successfully complete' a treatment program."

[8] According to the affidavit, there are three treatment series that are prerequisite to sex offender treatment, comprising a total of at least fifty-five sessions. The frequency of these sessions is not stated. Hence it is unclear whether Appellant has likely reached the enrollment point; he almost surely had not reached it by the time his brief was filed.

In fact, Prosecution Exhibit 4 was discussed in a limited way at the trial, to ensure that Appellant understood the use of the stipulation and agreed to both the stipulation and its use. (R. at 388-89.) The military judge ascertained that Appellant had read it (R. at 388), but did not discuss with Appellant the obligations it sets forth for an individual seeking to enroll in the sex offender treatment program. Given Appellant's status as an officer, and his intelligence and education, evident in the record, we are loath to assume that he did not understand Prosecution Exhibit 4 and its connection to his agreement to enroll in sex offender treatment. *See United States v. Sweet*, 42 M.J. 183 (C.A.A.F. 1995). Still, we cannot say that R.C.M. 910(f) has been fully complied with, which constitutes error.

In *United States v. Felder*, 59 M.J. 444 (C.A.A.F. 2004), the military judge's inquiry into the plea agreement did not include an inquiry into one of the terms of the agreement whereby certain motions were waived. CAAF found this to be error, but also found that the appellant in that case had not demonstrated (indeed, had not averred) any prejudice to a substantial right from the omission, as required by Article 59(a) before relief may be granted. Therefore the Court affirmed the decision of the court below. *Id.* at 445-46.

In *United States v. Cockrell*, 60 M.J. 501 (C.G.Ct.Crim.App. 2004), the military judge failed to include in his inquiry an extensive sex offender treatment provision of the pretrial agreement. The provision required the appellant in that case to enroll in a sex offender treatment program at his own expense; subjected the appellant's choice of program to the convening authority's approval; and left it to the convening authority to determine whether the appellant was "compliant with treatment" as well as what action might be taken if he was not. *Id.* at 503-04. This Court found error, and further found potential prejudice in the unexplained provision that might be invoked in the future with unspecified consequences. *Id.* at 505-06. This Court accordingly barred the convening authority from taking any adverse action based on the sex offender treatment provision, and otherwise affirmed the findings and sentence. *Id.* at 507.

We see distinctions between the present case and *Cockrell*. There were serious gaps in the *Cockrell* pretrial agreement, in the discretion to determine compliance retained by the convening authority and with respect to consequences of the appellant's noncompliance. A proper inquiry might have filled the gaps or revealed the need for further negotiation to fill them, but there was no

inquiry at all into the provision at issue. Here, the pretrial agreement requires Appellant to enroll in the established sex offender treatment program wherever he is confined, and provides that failure of compliance by Appellant allows the Convening Authority to vacate the suspension after following the hearing procedures set forth in R.C.M. 1109. The latter provision was properly inquired into by the military judge, and Appellant acknowledged his understanding of it. We discern no unlimited or undefined discretion on the part of the Convening Authority and no unspecified consequences. We do not see significant gaps in the instant pretrial agreement, and there was at least a semblance of an inquiry into the relevant provisions.

Under these circumstances, we find that, as in *Felder*, Appellant has not established material prejudice to a substantial right. However, if Appellant encounters an obstacle to his enrollment in sex offender treatment that was unrevealed and that he did not understand at the time of trial, and if it leads to action against him under the pretrial agreement, he may petition for relief according to law. *See Spriggs v. United States*, 40 M.J. 158 (C.M.A. 1994); *United States v. Bingham*, 3 M.J. 119, 120 n.2 (C.M.A. 1977).

### Clerical Error in Action of Convening Authority

The action of the Convening Authority withdraws and dismisses several charges and specifications to which Appellant pleaded not guilty and no findings were entered at trial. Included among these are "Charge IV, Specifications 4, 6, and 8." Charge IV had only a single specification, so this part of the action has no effect. Charge V, Specifications 4, 6, and 8 should have been withdrawn and dismissed instead.

### Decision

Consistent with the Government's concession, the Convening Authority is precluded from taking action against Appellant for failure to "successfully complete" a treatment program.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed. The Convening Authority shall issue a corrected action disposing of Charge V, Specifications 4, 6, and 8.

Judges PEPPER and McGUIRE concur.

For the Court,



Ryan M. Gray
Clerk of the Court