# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Lieutenant Colonel DEREK D. JEWELL
### United States Air Force

### ACM 38474

### 09 December 2014

Sentence adjudged 26 July 2013 by GCM convened at Joint Base Andrews Naval Air Facility Washington, Maryland. Military Judge: Christopher Santoro (sitting alone).

Approved Sentence: Dismissal, confinement for 6 months, fine of $39,374.45, and if the fine is not paid to be further confined for a period of 5 months.

Appellate Counsel for the Appellant: Captain Lauren A. Shure.

Appellate Counsel for the United States: Colonel William R. Youngblood; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

A general court-martial, composed of a military judge, convicted the appellant pursuant to his pleas of two specifications of larceny of Government money, and 24 specifications of fraud against the United States, in violation of Articles 121 and 132, UCMJ, 10 U.S.C. §§ 921, 932. The adjudged and approved sentence was a dismissal, confinement for 6 months, a fine of $39,374.45, and contingent confinement for an additional 5 months in the event the fine was not paid.

One issue was identified on appeal: whether the court-martial had jurisdiction over the appellant for a fraudulent travel voucher submitted on 3 June 2010 when his orders expired on 22 May 2010.

We find that the Government failed to prove jurisdiction by a preponderance of the evidence for one specification of fraud and for a part of the charged time frame with one of the larceny specifications. We modify the findings accordingly and reassess the sentence.

*Background*

The appellant was an officer with the Mississippi Air National Guard. For the period at issue, the appellant was placed on active duty orders under 10 U.S.C § 12301(d) (Title 10) to perform duties for the 153rd Air Refueling Squadron in Meridian, Mississippi (MS). The active duty orders began on 1 October 2008 and, after amendments, extended through 22 May 2010.

During this period on active duty, the appellant originally rented a home in Meridian, MS, and received reimbursement through travel vouchers for his rent payments. On 9 July 2009, he bought the house, stopped paying rent and began to pay a mortgage. However, the appellant continued to file travel vouchers claiming for the reimbursement of rent payments since this was a higher amount than his authorized mortgage reimbursement. Along with his travel vouchers, he created false receipts to document his supposed rental payments. He submitted 10 vouchers between 1 August 2009 and 30 April 2010 when he was on active duty orders. He submitted the eleventh voucher on 3 June 2010. He was paid for this last voucher on 10 June 2010 receiving $526.88 more than he was entitled to due to his fraudulent claims on this last voucher.

The appellant was again placed on active duty orders under Title 10 to perform duties for the 153rd Air Refueling Squadron. The active duty orders began on 15 January 2011 and, after amendments, extended through 10 February 2012. During this period of active duty, the appellant submitted 13 travel vouchers. Each of the travel vouchers included claims for lodging costs and fake receipts even though the appellant was staying with friends for free. The appellant also created a fake rental agreement.

Pursuant to a pretrial agreement, the appellant pled guilty to all charges and specifications. The issue of jurisdiction was not litigated. The appellant entered into a stipulation of fact which included the following declaration: "Between on or about 1 August 2009 and on or about 3 June 2010, the Accused did, while on active duty orders, within the continental United States, make eleven claims against the United Sates for rental housing, per diem, and expenses associated with his temporary duty assignment to the 153rd Air Refueling Squadron, Meridian, MS." The stipulation of fact also

included that the appellant's active duty orders began on 1 October 2008 and ended on 22 May 2010. The appellant also answered affirmatively when the military judge asked him if he was "on active duty, Title 10 orders throughout the entire time we're talking about," referencing the false claims made between 1 August 2009 and 3 June 2010. However, during his plea inquiry, the appellant told the military judge, "I was off orders in May 2010 and I came back on orders in January 2011."

Lieutenant Colonel (Lt Col) GS testified as a defense sentencing witness. Lt Col GS is also a member of the Air National Guard. Lt Col GS worked with the appellant at the 153rd Air Refueling Squadron on Project Liberty. He was asked to briefly describe the unclassified portions of the program and the appellant's involvement.

> Q: And how long was [Lt] Col Jewell involved in this program?
>
> A: From day one, I think we started— I think October 1st, and then he helped—he took a break because of the high burnout rate we lost a lot of instructors due to various reasons, but we went to Afghanistan and came back and he helped us transfer it back over to Beale, the one (inaudible), so about three years.
>
> Q: And when you say he went to Afghanistan, he went as a civilian?
>
> A: He went as a civilian contractor because he had the specialty code to work for L3 Javaman Project and the Top-Secret Compartmentalized Level II clearance, and [the appellant] flew the airplane they're flying now and worked directly with SOCOM.
> . . . .
>
> Q: And when you say—were you civilians when you went to Afghanistan?
>
> A: I was—I took a break for three months and went to Afghanistan to fly for (inaudible)[1].

---

[1] The record of trial contains numerous references to "inaudible" portions of the record of trial. The appellant concedes, and we agree, that the record of trial is substantially verbatim as none of the omissions are either quantitatively or qualitatively substantial. *See United States v. Davenport*, 73 M.J. 373 (C.A.A.F. 2014). However, this footnote should not be read as the court commending the repeated use of "inaudible" throughout the testimony of a variety of witnesses.

The 286th Air Operations Group Commander, Colonel YS, also testified at the court-martial. When asked to described how he knew the appellant, Colonel YS, stated in part,

> In late 2010, as the MC12 program was going away, he came to see me, was looking to continue his military career because the flying assignments were being dropped from the flying squadron for both the tanker that had gone away and the MC12, which was going away. He explained that he was working as a contractor, had to finish up the contractor tour, but upon his return he requested to join the organization as a traditional guardsman, which at that point, very glad to have him, very knowledgeable young man . . . .

The personal data sheet, prepared and admitted by the Government, includes two previous periods of combat service in Iraq and an overseas service in Japan but does not include any reference to service in Afghanistan. Likewise, the appellant's officer performance report for the period of 12 January to 30 September 2010 does not contain any reference to service in Afghanistan. The appellant's résumé was admitted and lists that he deployed to Afghanistan as a "civilian DOD contractor in direct support of OEF" for 60 days in July 2010.

*Jurisdiction*

We review questions of jurisdiction de novo. *United States v. Kuemmerle*, 67 M.J. 141, 143 (C.A.A.F. 2009). Jurisdiction is an interlocutory issue with the burden placed on the Government to prove jurisdiction by a preponderance of the evidence. *United States v. Oliver*, 57 M.J. 170, 172 (C.A.A.F. 2002); *see also* Rule for Courts-Martial 905(c)(2)(B).

It is well established that court-martial jurisdiction requires that the accused be subject to the UCMJ at the time of the alleged offenses. *United States v. Ali*, 71 M.J. 256, 261–62 (C.A.A.F. 2012) (citing *Solorio v. United States*, 483 U.S. 435 (1987)). In *Solorio*, the Supreme Court overruled its prior decision in *O'Callahan v. Parker*, 395 U.S. 258 (1969), and held that jurisdiction of a court-martial depends solely on whether the accused was a member of the armed forces at the time of the charged offense. *Solorio*, 483 U.S. at 435, 450–51.

Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1), generally defines persons subject to the code as those "[m]embers of a regular component of the armed forces . . . and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it." In addition, members of the Air National Guard when in Federal service are subject to the

4                                                                  ACM 38474

code.  Article 2(a)(3), UCMJ, 10 U.S.C. § 802(a)(3).  No other section of Article 2, UCMJ, explicitly covers guardsmen.  The appellant was in Federal service, and the court-martial clearly had jurisdiction during the time he was on active duty pursuant to orders issued under 10 U.S.C § 12301(d).  The court-martial had jurisdiction over the fraudulent claims he submitted while on those orders and the larcenies committed during those times.  The only question is did the court-martial have jurisdiction over the fraudulent claim submitted on 3 June 2010 and the portion of the larceny committed by the submission of that fraudulent claim when his orders expired on 22 May 2010?  We answer that court-martial jurisdiction did not exist under Article 2(a)(1) or under Article 2(a)(3) as he was not on duty with the armed forces and not performing inactive-duty training (IDT) in Federal service.

Article 2(c), UCMJ, 10 U.S.C. § 802(c), provides an alternative source of jurisdiction when personnel are "serving with an armed force" and meet a four part test. The limits of  Article 2(c) jurisdiction have been addressed by our superior court in *United States v. Phillips*, 58 M.J. 217, (C.A.A.F. 2003) and by our court in *United States v. Morita*, 73 M.J. 548, (A.F. Ct. Crim. App. 2014).  In *Phillips*, our superior court upheld our finding of jurisdiction over a reservist who committed her offense by eating marijuana brownies while in military quarters on a military base, on a travel day authorized by military orders, and on a day for which she received military pay, travel allowances, and point credit toward her military retirement.  In *Morita*, we examined the limits of Article 2(c) as applied to a reservist who submitted false travel vouchers after the completion of active-duty tours.  We held that jurisdiction did not apply and distinguished *Phillips*.

> The instant case presents a far different scenario where the appellant (for offenses that took place outside his periods of military service) was forging documents and collecting currency obtained through larceny when he was in no military status whatsoever.  The mere fact the appellant's offenses were aimed at the military does not confer jurisdiction, and we do not believe our superior court intended to extend jurisdiction over reservists to any scenario where the reservist commits an offense against the military.  In short, *Phillips* does not support extending jurisdiction under Article 2(c), UCMJ, to offenses committed when the appellant was not in military status . . . .

*Morita*, 73 M.J. at 561.

The facts in this case are similar to that holding in *Morita* in that the appellant was not on duty at the time he submitted his final fraudulent claim.  There is no evidence he

received any compensation for the time he completed and submitted his last travel voucher.

The Government argues that Article 2(c) jurisdiction applies because the appellant was a civilian contractor serving "with the armed forces" in June 2010. The Government's argument would transform Article 2(c) into applying court-martial jurisdiction over all reservists and guardsmen who have civilian jobs with the military or who work as civilian contractors with the military. This is far beyond the scope of what Congress intended in adding Article 2(c) jurisdiction. "The legislative history indicates that the amendment was primarily enacted to ensure that court-martial jurisdiction would not be defeated by assertions that military status was tainted by recruiter misconduct." *Phillips*, 58 M.J. at 219. Furthermore, the term "serving with" has a specialized meaning of "a relationship that is more direct than simply accompanying the armed forces in the field." *Id.* at 220. Article 2(c) is "not intended to affect reservists not performing active service or civilians. It is intended only to reach those persons whose intent it is to perform as members of the active armed forces and who met the four statutory requirements." *Id.* at 219 (quoting S. Rep. No. 96-197, at 122 (1979)). The Government's broad assertion of jurisdiction over all reservists and guardsmen who receive a paycheck either directly or indirectly from the Department of Defense is not authorized by Congress.

Article 2(a)(10), UCMJ, 10 U.S.C. § 802(a)(10), might have provided jurisdiction over the appellant. "[I]n its current form Article 2(a)(10) provides jurisdiction '[i]n time of declared war or contingency operation, [over] persons serving with or accompanying an armed force in the field.'" *United States v. Ali*, 71 M.J. 256, 262 (C.A.A.F. 2012). The term "in the field" means in an area of actual fighting. *Id* at 264. "[A]n accused may be regarded as 'accompanying' or 'serving with' an armed force, even though he is not directly employed by such a force or the Government, but, instead, works for a contractor engaged on a military project." *Id*. at *263* (quoting *United States v. Burney*, 21 C.M.R. 98, 110 (C.M.A. 1956)) (internal quotation marks omitted). There is sufficient evidence to say that sometime between his end of service in 22 May 2010 and his next period of active-duty service in 15 January 2011, the appellant worked as a civilian in Afghanistan on a contract for the military. However, the burden is upon the Government to prove jurisdiction by a preponderance of the evidence. The evidence in the record of trial is insufficient for this court to determine the appellant's status on the exact dates of 3 June 2010, when he submitted the fraudulent claim, through 10 June 2010, when he was paid for it. We conclude the Government has not met its burden.

Having found the court-martial only had subject matter jurisdiction over the appellant for misconduct committed while he was in Article 2(a)(1), UCMJ, status, we affirm only those offenses. We therefore set aside the finding of guilty to Specification 11 of Charge II for the fraud against the Government committed on 3 June 2010. We affirm Specification 1 of Charge I by excepting the language "on or about

6 June 2010" and substitute therefor the language "on 22 May 2010." We affirm the remainder of the findings.

*Sentence Reassessment*

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

Here there is no dramatic change in the penalty landscape from our action regarding Charge II, Specification 11; the maximum confinement is reduced from 130 years to 125 years. The forum was judge alone and this court is "more likely to be certain of what a military judge would have done as opposed to members." *Id.* at 16. The remaining 23 specifications of fraud against the Government and the 2 larceny specifications, as modified, capture the gravamen of the criminal conduct. Last, we determine that the remaining offenses are of the type that we have experience and familiarity with as appellate judges to determine the sentence that would have been imposed. The appellant is still convicted of two specifications of larceny on divers occasions spanning nearly two years, and 23 specifications of fraudulent claims. He had over six months between his two schemes to contemplate whether avarice or service was more important. The amount of the 3 June 2010 claim that was fraudulent was $526.68.[2] We reduce both the fine and the contingent confinement accordingly. We have considered the totality of the circumstances and reassess the sentence as follows: dismissal, confinement for 6 months, and a fine of $38,847.77 and if the fine is not paid to be further confined for a period of 4 months.

---

[2] The stipulation of fact states that the appellant stole $526.68 from the United States on 10 June 2010. Our review of the supporting documentation attached to the stipulation of fact leads us to conclude that the amount of this larceny and the total amount of his larcenies was understated. However, we will use the amounts that the parties stipulated were "true" statements of his larcenies as the "law of the case." *See United States v. Riley*, 50 M.J. 410, 415 (C.A.A.F. 1999) (stating that an appellate court may not affirm on a theory not presented to the trier of fact).

*Conclusion*

The finding of guilty as to Specification 11 of Charge II is set aside and dismissed. We affirm Specification 1 of Charge I by excepting the language "on or about 6 June 2010" and substituting therefor the language "on 22 May 2010." We affirm the remainder of the findings. We affirm only so much of the sentence as provides for a dismissal, confinement for 6 months, and a fine of $38,847.77 and if the fine is not paid to be further confined for a period of 4 months.

The findings, as modified, and the sentence, as reassessed and modified, are correct in law and fact, and no remaining error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, and the sentence, as reassessed and modified, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38474