Judge ERDMANN delivered the opinion of the court.
Two days after Airman First Class Dustin M. Hart received his Discharge from Active Duty (DD Form 214), but before he received separation pay, his command stopped processing the computation of his final pay and revoked his DD Form 214. Several weeks later various drug charges were preferred against him. We granted review of this case to consider whether the charge and specifications must be dismissed for lack of personal jurisdiction. 65 M.J. 322 (C.A.A.F.2007).
*274 Pursuant to 10 U.S.C. § 1168(a) (2000), a servieemember may not be discharged from active duty until his discharge certificate “and his final pay or a substantial part of that pay, are ready for delivery to him.” We agree with the military judge and the United States Air Force Court of Criminal Appeals which concluded that Hart’s final pay, or a substantial portion thereof, was not ready for delivery. See United States v. Hart, No. ACM 36253, 2006 CCA LEXIS 314, at *11-*12, 2006 WL 3513949, at *4 (AF.Ct.Crim. App. Nov. 30, 2006) (unpublished). Accordingly, the discharge action was not completed and court-martial jurisdiction existed. We affirm.
BACKGROUND
Hart confessed to various drug offenses during an interview with the Air Force Office of Special Investigations (AFOSI) on January 2, 2004. Following his confession he worked with AFOSI for several months as a confidential informant gathering information about illegal drug use by active duty members. During this time no charges were preferred against him. Unbeknownst to AFOSI, on January 8, 2004, a Medical Evaluation Board found Hart physically unfit for military service. Officials from the Office of the Secretary of the Air Force notified the separations section of his unit that he was to be administratively separated with a disability discharge.
Notwithstanding a memorandum from the base’s legal office requesting that he “be placed on administrative hold for 120 days pending an administrative proceeding,” Hart was instructed to begin outprocessing from the Air Force.[1] The separations section gave him a Request and Authorization for Separation for Discharge (AF Form 100) to show that he was being outprocessed for a disability discharge as well as an outprocessing checklist. As part of the outprocessing procedure he was required to checkout with the finance section. That office required completion of a separate “finance” checklist and a final interview with finance personnel.
After the checklists were completed, Hart met with a finance technician on February 24, 2004, and provided the information necessary for the calculation of his final pay. That same day, Hart’s section commander cleared Hart for final outprocessing.[2] Two days later, the initial calculation of Hart’s separation pay was entered into the computer system of the Defense Finance and Accounting System (DFAS). The military judge found this entry to be a “snapshot” of the projected separation settlement based upon the information in the DFAS computer at the time and “not a final pay calculation.” On March 3, 2004, the separations section issued Hart his DD Form 214 reflecting that date as the effective date of separation.
On March 5, 2004, Hart’s squadron commander, AFOSI, and the legal office learned that Hart had received his DD Form 214. The legal office directed the finance office not to take any further action in calculating Hart’s final pay. Hart’s squadron commander issued a memorandum to the support squadron asking that the DD Form 214 be revoked and that Hart be retained on active duty “due to his involvement with a number of serious offenses under the Uniform Code of Military Justice.” Hart was reported absent without leave on March 9, 2004, and arrested by civilian authorities on March 18, 2004. He was returned to military control and charges were preferred against him on March 23,2004.
Prior to trial, Hart moved to dismiss the charges based upon lack of personal jurisdiction. The military judge conducted a hearing on the motion and found, among other things, that there was never a final calculation of pay. At the time the pay process was halted, certain steps in the process of calculating final pay required by the DFAS manual, DFAS-DEM 7073-1, ch. 52 (Jan. 15, 1998), had not been accomplished. In light *275 of these findings the military judge concluded:
I find that the government has proven by a preponderance of evidence that they have personal jurisdiction in this case, and the Accused can be tried by court-martial. The Accused was never finally discharged from active duty service in the United States Air Force, as there was never a final accounting of pay — his final pay, or a substantial portion thereof was never made ready for delivery to him as required by 10 U.S.C. § 1168(a) and military case law. The military retains jurisdiction over the Accused.
Hart filed a writ of mandamus with the lower court, which was denied. He subsequently filed a writ-appeal with this court, which was denied without prejudice. 60 M.J. 434 (C.AA.F.2004). At trial, Hart entered guilty pleas and was convicted of wrongful use, possession and distribution of various controlled substances.[3] Following his conviction, the Court of Criminal Appeals considered the question of jurisdiction in the ordinary course of appeal and agreed with the military judge that neither “ ‘final pay1 nor a ‘substantial part of that pay’ were ready for delivery within the meaning of 10 U.S.C. § 1168(a).” Hart, 2006 CCA LEXIS 314, at *11-*12, 2006 WL 3513949, at *4. The lower court concluded that “[ajbsent a final accounting of pay, the appellant’s early discharge was not legally effectuated and he remained subject to military court-martial jurisdiction.” Id. at *12, 2006 WL 3513949, at *4.
ANALYSIS
Under Article 2(a)(1), UCMJ, “[mjembers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment” are subject to court-martial jurisdiction. 10 U.S.C. § 802(a)(1) (2000). As this court recognized long ago, “It is black letter law that in personam jurisdiction over a military person is lost upon his discharge from the service, absent same saving circumstance or statutory authorization.” United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985); see also United States v. King, 42 M.J. 79, 80 (C.A.A.F.1995) (quoting Howard, 20 M.J. at 354).
This case requires us to determine whether a valid discharge occurred which would deprive the Air Force of in personam jurisdiction over Hart. The UCMJ itself does not define the exact point in time when discharge occurs, but for nearly twenty years, this court has turned to 10 U.S.C. §§ 1168(a) and 1169 (2000), a personnel statute, for guidance as to what is required to effectuate discharge. See, e.g., United States v. Harmon, 63 M.J. 98, 101-02 (C.A.A.F. 2006); United States v. Melanson, 53 M.J. 1, 2 (C.A.A.F.2000); United States v. Keels, 48 M.J. 431, 432 (C.A.A.F.1998); King, 42 M.J. at 80; King, 27 M.J. at 329; see also Howard, 20 M.J. at 354 (noting that “[discharges are governed by 10 U.S.C. § 1168(a)”). We do so here as well.[4]
Section 1168(a), which governs “Discharge or release from active duty: limitations,” states as follows:
*276 A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.
10 U.S.C. § 1168(a). Section 1169, provides further:
No regular enlisted member of an armed force may be discharged before his term of service expires, except—
(1) as prescribed by the Secretary concerned;
(2) by sentence of a general or special court martial; or
(3) as otherwise provided by law.
10 U.S.C. § 1169. In King, this court reasoned:
We read these statutes as generally requiring that three elements be satisfied to accomplish an early discharge. First, there must be a delivery of a valid discharge certificate____ Second, there must be a final accounting of pay made. This is an explicit command set forth by Congress in 10 U.S.C. § 1168(a)---- Third, appellant must undergo the “clearing” process required under appropriate service regulations to separate him from military service.
27 M.J. at 329 (citations omitted).
The jurisdictional rulings of the military judge and the Court of Criminal Appeals hinge on the determination that there was no final accounting of pay. That is, Hart was not effectively discharged because the criteria under § 1168(a) that “his final pay or a substantial part of that pay, are ready for delivery to him” were not met. Hart argues that neither 10 U.S.C. § 1168(a) nor King define or address the meaning of “final accounting of pay” or “ready for delivery.” He further argues that since the finance office had all the information they needed to compute the final pay, the criteria of § 1168(a) were satisfied once his “clearing process” was complete. The Government maintains that on the undisputed facts of the case, Hart’s final pay had not undergone a final accounting and was not ready for delivery. Therefore, the Government urges that under 10 U.S.C. § 1168(a), Hart’s discharge process was not completed and the Air Force retained court-martial jurisdiction over him.
‘When an accused contests personal jurisdiction on appeal, we review that question of law de novo, accepting the military judge’s findings of historical facts unless they are clearly erroneous or unsupported in the record.” Melanson, 53 M.J. at 2. Here, neither party claims that the factual findings of the military judge are clearly erroneous. Accordingly, we accept the military judge’s factual findings.
Our review of the military judge’s factual findings compels the conclusion that neither final pay nor a substantial part of that pay were ready for delivery within the meaning of the plain language of 10 U.S.C. § 1168(a). We therefore reject Hart’s contention that the facts here are sufficient to establish these essential criteria for discharge.
Based on the DFAS manual and the procedures of the base finance office, the military judge found that the following steps are required under DFAS regulations to calculate final pay:
(1) DFAS generates an initial preliminary calculation of final pay;
(2) A finance technician manually calculates the final pay on a spreadsheet, balancing moneys owed to the member with debts owed by the member;
(3) The finance technician reconciles any discrepancy between the DFAS calculation and the manual calculation;
(4) The technician completes a payment authorization request;
(5) The technician forwards the member’s file along with a payment request to the noncommissioned officer in charge of the unit’s customer service, who reviews the technician’s calculations;
(6) The noncommissioned officer in charge, who is the only one who can approve payment, forwards payment authorization to a separate section of the finance section for quality examination;
(7) A technician forwards disbursement authorization to DFAS.
*277 The military judge found that “only the initial DFAS, ‘snap-shot’ calculation had been accomplished.” As such, critical calculations, reconciliations, and authorizations of final pay pursuant to DFAS regulations had not yet started. The lower court was correct to conclude that DFAS could not have issued separation pay to Hart under these circumstances so neither “ ‘final pa/ nor a ‘substantial part of that pa/ were ready for delivery within the meaning of 10 U.S.C. § 1168(a).” Hart, 2006 CCA LEXIS 314, at *11-* 12, 2006 WL 3513949, at *4.
The military judge also found that there was no evidence that the finance personnel were “deliberately trying to slow down the processing of [Hart’s] pay.” Rather, “[i]t was a normal processing of accounts based on workload and manning.” The military judge found that this finance office had a twenty-day window to manually compute a person’s pay and forward that computation to DFAS for disbursement. The payment process was halted at the command’s request before the twenty days expired.[5] The language of 10 U.S.C. § 1168(a) setting limitations on discharge or release from active duty plainly precludes discharge unless “final pay or a substantial part of that pa/’ is “ready for delivery.” On the facts of this case, these criteria were not fulfilled. Accordingly, Hart was not effectively discharged and remained subject to court-martial jurisdiction pursuant to Article 2(a)(1), UCMJ.
DECISION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. None of the personnel in the separations section were aware of the legal office memorandum until after Hart received his DD Form 214.

. Hart’s section commander was aware that Hart had been working with AFOSI, but was unaware that he was personally implicated in criminal activity.

. Hart was convicted of wrongful use of marijuana, Diazepam, and Alprazolam, wrongful possession of Diazepam and wrongful distribution of Alprazolam, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000).

. The dissent suggests that the majority opinion is ignoring the settled precedent of this court while the dissent follows such precedent. United States v. Hart, 66 M.J. at 278-80 (C.A.A.F.2008) (Effron, C.J., with whom Stucky, J., joins, dissenting). In fact, just the opposite is true. Despite the representations in the dissent, this court has turned to 10 U.S.C. § 1168(a) since 1985 to assist in determining whether a discharge has occurred for UCMJ purposes. See United States v. Howard, 20 M.J. 353, 354 (C.M.A.1985). The dissent would have the date contained in the DD Form 214 determine the effective date of discharge without regard to the criteria found in 10 U.S.C. § 1168(a) or United States v. King, 27 M.J. 327, 329 (C.M.A.1989), which the dissent would overrule sub silentio. There are no prior decisions of this court that have held that the date on the DD Form 214 determines the effective date of discharge for UCMJ purposes and the dissent cites none. Nor has the application of 10 U.S.C. § 1168(a) ever been limited by this court to only those situations where "the unsettled state of the record requires consideration of multiple factors.” Hart, 66 M.J. at 280 (Effron, C.J., with whom Stucky, J., joins, dissenting).

. This case does not involve any delay in the processing of Hart’s separation pay. We have not had occasion to address the jurisdictional effects if payment were not accomplished within a reasonable time frame established by applicable regulation for completion of the payment process. The dissent’s criticism that as a result of our ruling members will be held on active duty indefinitely sounds a false alarm and is unwarranted for several reasons. Hart, 66 M.J. at 278-79 (Effron, C.J., with whom Stucky, J., joins, dissenting). First, as just noted, we have not addressed the case where DFAS has acted outside its own regulations, which provide a time certain for delivery of a final accounting of pay. Second, contrary to the dissent’s suggestion, this is not new law. We have relied on 10 U.S.C. § 1168(a) for guidance in determining the moment of discharge for purposes of UCMJ jurisdiction since 1985. See Howard, 20 M.J. at 354. Third, we are, of course, only addressing matters of UCMJ jurisdiction. Finally, to the extent the dissent’s argument is founded in legal policy, it ignores the sound public policy reasons why the public’s interest as well as the interests of military members and their dependents may be better served during the transition from military to civilian life by a system that allows flexibility in accounting for moneys due as well as in providing for health and other coverage during transitional travel.