UNITED STATES, Appellee

v.

Kirkland C. NETTLES, Captain
U.S. Air Force, Appellant

No. 14-0754

Crim. App. No. 38336

United States Court of Appeals for the Armed Forces

Argued March 17, 2015

Decided July 6, 2015

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN, RYAN, and OHLSON, JJ., joined.


Counsel


For Appellant:  Captain Jeffrey A. Davis (argued).


For Appellee:  Major Mary Ellen Payne (argued); Lieutenant Colonel Katherine E. Oler and Gerald R. Bruce, Esq. (on brief); Captain Thomas J. Alford.


Military Judge:  Michael J. Coco


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether the Air Force had personal jurisdiction over Appellant at the time of his court-martial. We hold that it did not, and that therefore the judgment of the United States Air Force Court of Criminal Appeals (CCA) is vacated, the findings and sentence are set aside, and the case is dismissed.

## I. Background

Appellant was on active duty between September 2001 and August 2007. He then served in the Ready Reserve and transferred to the Individual Ready Reserve (IRR) on April 1, 2011. On March 14, 2012, Appellant was notified that he was to be discharged from the IRR on October 1, 2012, as he had twice been passed over for promotion. Two months later, on May 8, 2012, charges were preferred against him relating to sexual misconduct. The Secretary of the Air Force approved the recall of Appellant to active duty for the purposes of court-martial on July 18, 2012. The special court-martial convening authority's staff judge advocate asked the Air Reserve Personnel Center (ARPC) to place an administrative hold on Appellant so that he would not be discharged from the service, but the ARPC never did so. Accordingly, a discharge order was generated on September 25, 2012, with an effective date of October 1, 2012. The order and discharge certificate were never delivered, though, because

the responsible office had run out of the special card stock used to print the certificate, and the order and the certificate were normally sent out together.  In early November, 2012, the convening authority learned of the erroneously generated order, contacted ARPC, and ARPC rescinded the prior discharge order.

From January 28 to February 2, 2013, a general court-martial composed of officer members tried and convicted Appellant, contrary to his pleas, of various sexual offenses. He was sentenced to a dismissal, confinement for two months, and a reprimand.  At trial, Appellant challenged the court-martial as lacking personal jurisdiction over him.  The military judge and the CCA both held that personal jurisdiction remained despite the erroneous discharge order, because there was never any delivery of a discharge certificate.  See United States v. Nettles, No. ACM 38336, 2014 CCA LEXIS 254, at *9, 2014 WL 2039108, at *3 (A.F. Ct. Crim. App. Apr. 21, 2014) (unpublished).  Appellant now reasserts his personal jurisdiction claim before this Court.  This claim is reviewed de novo.  United States v. Fry, 70 M.J. 465, 470 (C.A.A.F. 2012).

## II.  Discussion

### A.  Personal Jurisdiction

We have held that a discharge terminates in personam court-martial jurisdiction after there is "(1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and

3

(3) the undergoing of a 'clearing' process as required under appropriate service regulations to separate the member from military service." United States v. Harmon, 63 M.J. 98, 101 (C.A.A.F. 2006). This is based on a civil personnel statute, 10 U.S.C. § 1168(a) (2012):

> A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

See United States v. Hart, 66 M.J. 273, 275 (C.A.A.F. 2008) ("The UCMJ itself does not define the exact point in time when discharge occurs, but for nearly twenty years, this court has turned to 10 U.S.C. §§ 1168(a) and 1169 (2000), a personnel statute, for guidance as to what is required to effectuate discharge.").

In this case only the first requirement, "delivery," is at issue.[1] The delivery requirement has generated its own body of jurisprudence, the analysis of which yields two conclusions.

First, no delivery can be effective if it is contrary to expressed command intent. See Harmon, 63 M.J. at 101 (informal practice of clerk to deliver certificate before effective time did not sever jurisdiction at the earlier time); United States v. Melanson, 53 M.J. 1, 4 (C.A.A.F. 2000) (early receipt of

---

[1] As a member of the IRR, Appellant had previously received a final accounting of pay and undergone the "clearing" process.

duplicate copy of discharge certificate did not terminate jurisdiction before the intended effective date); United States v. Batchelder, 41 M.J. 337, 339 (C.A.A.F. 1994) (early delivery for administrative convenience not effective in terminating jurisdiction); United States v. King, 27 M.J. 327, 329 (C.M.A. 1989) (formalistic "discharge" for purposes of immediate reenlistment did not terminate jurisdiction).  Next, it is strongly suggested that "delivery" means actual physical receipt.  See Harmon, 63 M.J. at 102 ("physical delivery of a discharge certificate is generally considered the event that terminates a servicemember's active duty status"); United States v. Wilson, 53 M.J. 327, 333 (C.A.A.F. 2000) ("[W]e also note that there is no evidence that a discharge was ever delivered to appellant.  Even though two copies of the DD Form 214 were mailed . . . appellant has presented no evidence of receipt.").

Were we to apply the above analysis to the current case (as did the lower courts), the result would be clear.  The command did not intend for the discharge to take effect, as the convening authority intended to prevent discharge by placing Appellant on administrative hold.  Nor was there physical receipt of the discharge certificate, due to the paper shortage. For the reasons below, though, we decline to employ the 10 U.S.C. § 1168(a) framework here.

B.  Personal Jurisdiction Over Reservists

Crucially, and unlike in the above cases, Appellant was a reservist at the time of his court-martial, and was not on extended active duty during the events relevant to this case. The discharge and delivery jurisprudence that has been created for active duty personnel is of questionable applicability to the reserves, and there are strong reasons for taking a different approach in this context.

First, the statute that has guided our discharge jurisdiction law fails to mention the reserves, and instead states only that a member "may not be discharged or released from active duty" until its requirements are met.  10 U.S.C. § 1168(a) (2012) (emphasis added).  Even on its own terms, then, the statute is inapplicable.

Moreover, since we do not apply § 1168 when determining jurisdiction -- but instead look to it only for "guidance," Hart, 66 M.J. at 275 -- its demands are not binding when we find that they go against reason or policy.[2]  Such is the case here, primarily because of the requirement for actual physical delivery.

The overarching interest implicated by the law of personal jurisdiction, and especially discharge jurisprudence, is the

---

[2] The law of discharges for the purposes of criminal jurisdiction is judicially created, and therefore we are free to modify it without being constrained by § 1168.  See Hart, 66 M.J. at 275.

need -- of both servicemember and service -- to know with certainty and finality what the person's military status is and when that status changes.  See United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985) (emphasizing significance of determining the moment of discharge, as this is the moment that the "transaction is complete [and] that full rights have been transferred").  This is important for the armed forces both abstractly and concretely:  abstractly, because certainty of status indicates who actually is in the service and subject to the Uniform Code of Military Justice (UCMJ), and concretely, because such certainty provides clear guideposts for prosecutors and commanders when taking actions with a view towards litigation (thus preventing the waste of time and resources). Certainty and finality are also important to the servicemember, of course, so that he can guide his conduct with awareness of the potential (or not) for criminal liability under the UCMJ.

    We conclude that these weighty interests are frustrated by a rule requiring the physical delivery of a discharge certificate for reservists.  A reservist relies on the mail and the service's administrative apparatus to process the certificate and deliver it to him.  A panoply of intervening forces can work to prevent this, as is well illustrated by this case, but the member's status ought not hinge on their occurrence or nonoccurrence.  Because certainty of status is so

crucial in the discharge context, we decline to apply the physical delivery rule to the reserve components.

Instead, we think it more appropriate to apply the statute that actually discharged Appellant: 10 U.S.C. § 14505 (2012) ("Effect of failure of selection for promotion: reserve captains of the Army, Air Force, and Marine Corps and reserve lieutenants of the Navy").[3] The statute reads:

> [A] captain on the reserve active-status list . . .
> who has failed of selection for promotion to
> the next higher grade for the second time . . .
> shall be separated . . . not later than the first
> day of the seventh month after the month in which
> the President approves the report of the board
> which considered the officer for the second time.

Id. Notably, no mention is made of delivery or even of a certificate. Instead, the statute contemplates a definite date and provides for its computation. This provides finality and certainty, and insulates the process from the potential problems associated with administrative oversight or the mail.

Accordingly, in cases of reserve personnel with self-executing discharge orders issued pursuant to statute, it is the effective date of those orders that determines the existence of personal jurisdiction -- not physical receipt of a piece of paper. The law has generally moved beyond imbuing formalistic

---

[3] Like 10 U.S.C. § 1168(a), this statute does not directly control court-martial jurisdiction over a reservist, but we turn to it for guidance.

8

acts with such significance, and we should not require what amounts to livery of seisin[4] to effectuate a discharge.

### C. Personal Jurisdiction Over Appellant

We turn now to the facts of this case. Appellant was a member of the IRR, a status which did not require him to perform any duty and in which he was not paid.[5] He was passed over for promotion for the second time on March 14, 2012, meaning that 10 U.S.C. § 14505 required the Air Force to discharge Appellant by October 1, 2012. This is what the President ordered in the reserve order, which had an effective date of October 1, 2012. This self-executing order accomplished what the statute commanded; physical receipt of a discharge certificate was not required to terminate jurisdiction.

The Government makes much of the fact that, while the ARPC issued the discharge order so as to comply with the statute, the convening authority concurrently attempted to place Appellant on administrative hold and retain him in the service. But in fact Appellant was never placed on administrative hold.

_____

[4] "[T]he ceremonial procedure at common law by which a grantor conveyed land to a grantee . . . . The ceremony involved going on the land and having the grantor symbolically deliver possession of the land to the grantee by handing over a twig, a clod, or a piece of turf." Bryan A. Garner, A Dictionary of Modern Legal Usage 534 (2d ed. 1995); see generally Frederic William Maitland, Mystery of Seisin, 2 L.Q. Rev. 481 (1886).

[5] There is a statute, 10 U.S.C. § 12319 (2012), providing for one day of "muster duty" per year for ready reservists. The statute is not mandatory and there is no indication that Appellant was ever required to perform it.

The Secretary of the Air Force authorized the recall of Appellant to active duty, as needed, so that Appellant would be subject to disciplinary proceedings. The convening authority, however, did not recall Appellant to active duty for the period until the court-martial was completed, as he could have done. See Article 2(d), UCMJ, 10 U.S.C. § 802(d) (2012). Instead, for whatever reason, the convening authority ordered him to active duty for specific proceedings -- preferral, Article 32, UCMJ, 10 U.S.C. § 832 (2012), arraignment -- and then apparently allowed him to return to a nonduty, nonpay status.[6] Hence, Appellant oscillated between brief periods of active duty and lengthy periods in a nonduty status. We hold that, in cases where the accused is not on active duty pursuant to an administrative hold on the date the self-executing order sets for a reservist's discharge, he is not subject to court-martial jurisdiction.

This conclusion flows both from the facts of this case and from deeper concerns relating to personal jurisdiction. As we recently stated, because of the duties imposed by military status, "we review the laws and regulations governing enlistment and separation with sensitivity." United States v. Watson, 69

---

[6] The military judge found that Appellant was not activated permanently but had instead been activated on three distinct occasions -- in May 2012 for preferral of charges, in July 2012 for the pretrial investigation under Article 32, UCMJ, and in October 2012 for arraignment. Neither party argued that these findings were clearly erroneous.

M.J. 415, 416 (C.A.A.F. 2011).  This is especially salient in the context of most reserve personnel, who inherently occupy a gray area and are therefore most in need of clear rules so as to guide their conduct.

Because 10 U.S.C. § 14505 commanded that Appellant be discharged no later than October 1, 2012, and because Appellant was not on active duty under an administrative hold on the date of the self-executing discharge orders, Appellant's discharge became effective on the date ordered -- regardless of the failure physically to deliver the discharge certificate.  No military jurisdiction therefore existed over his person at the time of his arraignment in October 2012 or his court-martial in January and February of the following year.

## III.  Judgment

The judgment of the United States Air Force Court of Criminal Appeals is vacated.  The findings and sentence are set aside, and the case is dismissed.