# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class CHRISTOPHER E. CHRISTENSEN**
**United States Army, Appellant**

ARMY 20140372

Headquarters, Fort Stewart
John T. Rothwell, Military Judge (trial)
Jacob D. Bashore, Military Judge (*DuBay* hearing)
Colonel Francisco A. Vila, Staff Judge Advocate (pretrial)
Colonel Luis O. Rodriguez, Staff Judge Advocate (recommendation)
Lieutenant Colonel Peter R. Hayden, Staff Judge Advocate (addendum)
Colonel Michael D. Mierau, Jr., Staff Judge Advocate (*DuBay* hearing)

For Appellant: Colonel Mary J. Bradley, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major Christopher D. Coleman, JA (on brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA (on reply brief, reply brief in response to specified issue, and brief and reply brief following a *DuBay* hearing); Colonel Mary J. Bradley, JA; Captain Ryan T. Yoder, JA; Major Christopher D. Coleman, JA (on brief in response to specified issue).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Tara E. O'Brien Goble, JA (on brief, brief in response to specified issue, and brief following a *DuBay* hearing).

15 June 2017

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. §920 (2006 & Supp. V 2012) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for

eight years, forfeiture of all pay and allowances, and reduction to the grade of E-1; the military judge granted appellant ninety days credit against confinement pursuant to Article 13, UCMJ. The convening authority approved the adjudged sentence and ninety days of confinement credit.

Appellant, before us on appeal pursuant to Article 66, UCMJ, raises three assignments of error, one of which concerns personal jurisdiction. Prior to this review, we ordered a fact finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to further explore this issue. With the benefit of the military judge's findings of fact and conclusions of law at the *DuBay* hearing, we resolve this issue, as well as the other assigned errors, against appellant.[1,2]

## BACKGROUND

On 6 March 2013, First Lieutenant FR initiated proceedings to involuntarily separate appellant from the Army for alcohol abuse rehabilitation failure pursuant to

---

[1] Appellant, in his second assignment of error, asks this court to grant him pretrial confinement credit pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984), for time spent before his court-martial in a civilian jail and then a civilian rehabilitation facility. We find appellant waived this issue by failing to raise it at trial. *See United States v. Rosalesleonor*, ARMY 20140230, 2015 CCA LEXIS 260 (23 Jun. 2015). Even if we did not find waiver, we would not grant appellant *Allen* credit for his time in the rehabilitation facility as he voluntarily entered the facility for a reduced civilian bond when facing possible charges in a civilian court.

In his third assignment of error, appellant seeks sentence relief because it took 242 days to conduct post-trial processing. We find no due process violation and do not find the sentence to be inappropriate notwithstanding the time it took to prepare appellant's case for convening authority action. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006).

[2] The matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), both with his original assignment of error and following the *DuBay* hearing, to the degree they are not duplicative with the errors assigned by his appellate counsel, do not merit individual discussion or relief.

Army Reg. 635-200, Personnel Separations: Active Duty Enlisted Administrative Separations, Ch. 9 (6 Jun. 2005; Rapid Action Revision 6 Sep. 2011).[3]

On or about 8 March 2013, Liberty County, Georgia, officials arrested appellant for sexual assault involving another soldier that occurred in December 2012. In response to the civilian incarceration, appellant's unit changed his duty status from "present for duty" to "CCA Civilian Confinement." That arrest did not halt appellant's separation processing. Later that month, Lieutenant Colonel (LTC) JD, the 1st Armored Brigade Combat Team (Rear) (Provisional) commander and Special Court-Martial Convening Authority (SPCMCA), allowed the separation process to proceed. On 27 March 2013, the separation authority, LTC MT, approved appellant's separation, apparently unaware of the sexual assault investigation by civilian authorities. At that time, appellant was not being paid due to his confinement status and had no final pay coming to him. In fact, he owed a debt to the Army as he received pay for a brief period following his incarceration by civilian authorities.

On or about 17 April 2013, Sergeant MD cleared the Fort Stewart installation on behalf of appellant, as appellant was not able to personally perform this task due to his confinement. This process included a meeting with a representative of the Fort Stewart finance section, who provided an estimate of appellant's final pay. Upon completion of the clearing process, the Fort Stewart transition center published orders discharging appellant with an effective date of 17 April 2013. On 18 April 2013, the transition center completed appellant's Dep't of Def., Form 214, Certificate of Release or Discharge from Active Duty (1 Aug. 2009) (DD Form 214) and mailed it to appellant's next of kin.

On 17 April 2013, the Fort Stewart finance office sent appellant's case to the Defense Finance and Accounting Service-Indianapolis (DFAS), where it was routed to the Reconciliation and Technical Branch. At that time, appellant's pay account was in a suspended, or "T" status, and also coded with a "K" status as a result of appellant's confinement by civilian authorities. In order to compute appellant's final pay, his pay account needed an active "NT" line. Fort Stewart forwarded appellant's case to DFAS because appellant's "K" status required special processing by DFAS in order to issue the NT line.

Lieutenant Colonel AT served as the chief of justice in the 3rd Infantry Division staff judge advocate's office. In that role, he monitored the status of sexual assault cases, both on and off post, involving soldiers assigned to Fort Stewart, to include appellant's case with the civilian authorities. He did so in

---

[3] This separation action sought to discharge appellant before the expiration of his term of service; his enlistment did not expire until 2015.

consultation with Captain (CPT) AC, a rear brigade judge advocate and trial counsel, who was also monitoring appellant's case. In late April 2013, LTC AT and CPT AC learned of appellant's separation action. Captain AC was not aware of the separation package because it had been staffed between the rear detachment command and rear detachment paralegal staff. Lieutenant Colonel AT was likewise unaware of the decision to administratively separate appellant. Both LTC AT and CPT AC were concerned the local authorities might plead appellant's case down to a lesser charge and, therefore, wanted to retain options concerning possible court-martial jurisdiction. Additionally, a memorandum from the Secretary of Defense,[4] reinforced by a Fort Stewart command policy, withheld disposition authority of sexual assault allegations from commanders who did not possess special court-martial convening authority and were not in the grade of O-6 (colonel) or higher.

On 25 April 2013, LTC AT contacted finance personnel at Fort Stewart to stop the final pay and accounting in appellant's discharge case in order to preserve the Army's jurisdiction over the appellant. Fort Stewart finance personnel, in turn, called DFAS to return appellant's case. On or about 1 May 2013, the DFAS Reconciliation Branch referred the case to Mr. MJ at DFAS. In the normal course of business, Mr. MJ took the kinds of actions on a pay account for a soldier in a "K" status needed to complete final accounting of pay. Based on the Fort Stewart request, Mr. MJ closed appellant's account without action. On 2 May 2013, the Fort Stewart finance office closed appellant's separation case without any computation of appellant's final accounting of pay.

On or about 14 May 2013, CPT AC emailed LTC JD with an update concerning appellant's status and an explanation why the legal office had halted appellant's pay processing. Captain AC presented LTC JD with several options, to include allowing appellant to be fully separated. Based on this exchange, on 15 May 2013, LTC JD directed CPT AC to hold the DFAS processing so the command could make a disposition decision concerning the sexual assault allegations. Lieutenant Colonel JD believed that stopping appellant's final accounting of pay would suffice to prevent appellant's separation so the command could make a disposition decision regarding the sexual assault allegations.

From 25 April 2013 to 28 June 2013, LTC AT took several steps and communicated with a number of people at the Fort Stewart personnel and finance offices and Army Human Resources Command (HRC) to revoke appellant's separation orders and DD Form 214. On 13 June 2013, LTC AT sent an email to Mr. SK, the Chief, Transitions Branch, at the HRC, requesting the revocation of appellant's DD Form 214. As of 18 June 2013, the Army personnel system showed

---

[4] Secretary of Defense Memorandum, Subject: Withholding Initial Disposition Authority Under the Uniform Code of Military Justice in Certain Sexual Assault Cases (20 Apr. 2012).

appellant's separation had been revoked and listed him in the active component. However, his separation orders and DD Form 214 had not been revoked. His finance records at the time still reflected him in a suspended and confined status.

During this time, and throughout the summer, CPT AC continued to monitor the status of the civilian prosecution of appellant. In late August or early September 2013, Colonel JC, the brigade commander who had been forward deployed, signed the memorandum directing the revocation of appellant's separation orders. On 30 September 2013, the Fort Stewart Transition Office rescinded appellant's separation orders and his DD Form 214. On 26 September 2013, a member of the brigade judge advocate's office preferred a charge against appellant. On 12 December 2013, military policemen brought appellant back to military control. On the same date, another set of charges were preferred, which ultimately were the charges referred to trial.

## LAW AND DISCUSSION

"'When an accused contests personal jurisdiction on appeal, we review that question of law *de novo,* accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record.'" *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000). A factual "'finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). While appellant argues at great length that the *DuBay* military judge's findings are erroneous and contradicted by various items in the record, we find the military judge's findings and conclusions are supported upon a reading of the entire record, especially concerning the key issues surrounding jurisdiction in this case. Accordingly, we adopt those findings here.

"Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) personal jurisdiction over the accused, and (3) a properly convened and composed court-martial. *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006); *see* Rule for Courts-Martial [hereinafter R.C.M.] 201(b). Only the second of these requirements is at issue in this case.

"Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment[,]" are subject to court-martial jurisdiction. UCMJ art. 2(a)(1). "In general, a person becomes subject to court-martial jurisdiction upon enlistment in or induction into the armed forces . . . ." R.C.M. 202(a) discussion. Once attached, jurisdiction continues until the member is discharged. "It is black letter law that *in personam* jurisdiction over a

military person is lost upon his [or her] discharge from the service, absent some saving circumstance or statutory authorization." *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985).

As our superior court has long recognized, the UCMJ does not define an exact point when a discharge occurs, so it has turned to two personnel statutes, 10 U.S.C. §§ 1168 and 1169, for guidance in determining what is required to complete a discharge and terminate jurisdiction. *Hart,* 66 M.J. at 275 (citations omitted). The first statue states:

> A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

10 U.S.C. § 1168(a). Similarly, the second statue provides:

> No regular enlisted member of an armed force may be discharged before his term of service expires, except—
>
> (1) as prescribed by the Secretary concerned;
>
> (2) by sentence of a general or special court martial; or
>
> (3) as otherwise provided by law.

10 U.S.C. § 1169. For an early discharge, that is, a discharge prior to the expiration of a member's term of service, these statutes have been read to require three things:

> First, there must be a delivery of a valid discharge certificate. . . . Second, there must be a final accounting of pay made. This is an explicit command set forth by Congress in 10 U.S.C. § 1168(a). . . . Third, appellant must undergo the "clearing" process required under appropriate service regulations to separate him from military service.

*Hart*, 66 M.J. at 276 (quoting *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989)).

Here, the parties do not dispute that the first and third of these requirements were satisfied in this case. Sergeant MD took the steps necessary to clear appellant from Fort Stewart and the Fort Stewart transition center issued orders discharging appellant and mailed a completed DD Form 214 to appellant's next of kin.

6

As to the second requirement, the *DuBay* military judge found that processing the final pay and accounting for a Fort Stewart soldier in civilian confinement involved six discreet steps:

> 1) The Soldier, or his representative, attends a group briefing given by the Fort Stewart separation section of finance.
>
> 2) The Soldier, or his representative, attends a one-on-one briefing with the same section, where the Soldier is given an estimate of what he will receive, but a final accounting of pay is not yet done.
>
> 3) The confined Soldier's packet must be sent to DFAS-Indianapolis via the [Case Management System] for DFAS to take the Soldier out of a confined status, "K status," and put in an active status so that the final accounting of pay can be computed and paid. This process takes on average forty-five days, but it can take as long as ninety days to complete.[5]
>
> 4) The case is transferred back to the Fort Stewart separation section of finance for computation of final pay. A finance clerk at Fort Stewart computes the final accounting of pay.
>
> 5) The computation is sent for audit to the military pay and review section to ensure accuracy of the final computation. On average, steps 4 and 5 take approximately one calendar week.
>
> 6) The final accounting of pay is then ready for delivery, and the Fort Stewart separation section of finance disburses any funds due through DFAS.

---

[5] Appellant asserts the military judge erred by accepting as fact the testimony of a Fort Stewart pay technician that in the case of incarcerated soldiers, processing by DFAS to place the soldier in an active status can take forty-five to ninety days. By contrast, appellant cites the testimony of Mr. MJ from DFAS who testified he usually processes requests on confined soldiers within one week. We do not find an abuse of discretion by the military judge in relying on the testimony of a Fort Stewart pay technician who based her assessment of the time it takes to process a pay request upon years of practical experience.

Sergeant MD completed the first two of these steps in clearing Fort Stewart on behalf of appellant. The last four steps remained unfinished after LTC AT from the division legal office, about a week after the effective date of appellant's separation orders, succeeded in halting further processing of appellant's final pay and DFAS returned the case to Fort Stewart finance personnel without the required entries necessary to compute appellant's final pay.

Based upon these factors, the *DuBay* military judge concluded the Army retained jurisdiction over appellant because appellant's final pay, or a substantial part of that pay, was never computed or made ready for delivery to him.[6] *See* 10 U.S.C. § 1168(a); *King*, 27 M.J. at 329. We agree.

This case is analogous to the facts set forth in our superior court's decision in *Hart*. There, Airman First Class (A1C) Dustin M. Hart was placed on an administrative hold pending a court-martial. Despite this hold, he was processed for a medical discharge. As part of the clearing process, A1C Hart provided a finance technician with the information necessary to calculate his final pay. Two days after receiving his final clearance, the finance office entered the initial calculation of A1C Hart's separation pay into the DFAS computer system. Next, A1C Hart received his DD Form 214 and separation orders, effective about a week later. Several days after his separation, the legal office and commander learned A1C Hart received his DD Form 214. In response, the legal office directed the finance office not to take any further action in calculating A1C Hart's pay and his commander issued a memorandum to revoke the DD Form 214. The Air Force brought A1C Hart back to military control soon thereafter.

At trial, A1C Hart moved to dismiss the charges against him for a lack of personal jurisdiction. *Hart*, 66 M.J. at 274. In ruling on the motion, the military judge found the DFAS entry to be a "snapshot" of the projected separation settlement, but not a final calculation. *Id.* The military judge, therefore, concluded the Air Force retained personal jurisdiction over A1C Hart since his final pay was never made ready for delivery as required by 10 U.S.C. § 1168(a). As a result, he was never finally discharged. *Id.* at 275. The Court of Appeals for the Armed Forces (CAAF) upheld the military judge's ruling. In so doing, the CAAF noted the military judge's finding that there was no evidence finance personnel were deliberately trying to slow the payment process and that the payment was halted within the twenty-day window established by regulation to complete the final disbursement. *Id.*

---

[6] Like the *DuBay* military judge, we reject appellant's argument that this element was met because appellant owed a debt and was not to receive pay.

Here, the processing of appellant's pay stopped at a stage similar to that in *Hart*, and we find the reasoning of the *Hart* court persuasive and controlling. The initial calculations, or snapshot, of appellant's pay were entered into the DFAS system. Further action to calculate appellant's final pay depended upon the removal of a code by DFAS. This never occurred since LTC AT acted to halt this calculation and, later LTC JD, as the SPCMCA, effectively ratified this action in a timely manner. Accordingly, we concur with the *DuBay* military judge that appellant's "'final pay or a substantial part of that pay' were never computed or made ready for delivery to him" and that the Army retained jurisdiction over appellant.

Although we find the Army retained jurisdiction over appellant, we agree with the *DuBay* military judge that the delay in the official action in revoking appellant's separation orders was not a "standard to emulate[.]" A number of factors, compounded by what we perceive as poor communication, led to the delay in revoking the discharge orders and DD Form 214, and confusion over appellant's status. We, however, do not see this as an effort by the government to indefinitely postpone appellant's final pay while trying to decide whether to court-martial him. Lieutenant Colonel AT's communications with personnel at Fort Stewart and HRC to revoke appellant's separation paperwork bear this out. The government did not exercise bad faith in bringing appellant back to active duty. Whether a showing of bad faith on the part of the government would produce a different result is a question we do not reach under the facts of this case.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge CELTNIEKS and Judge BURTON concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

9