*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Christopher E. CHRISTENSEN, Private First Class
United States Army, Appellant

**No. 17-0604**

Crim. App. No. 20140372

Argued May 1, 2018—Decided July 10, 2018

Military Judges: John T. Rothwell (trial) and
Jacob D. Bashore (*DuBay* hearing)

For Appellant: *Captain Cody Cheek* (argued); *Colonel Mary J. Bradley*, *Lieutenant Colonel Christopher D. Carrier*, *Lieutenant Colonel Tiffany Chapman*, *Major Christopher Coleman*, and *Major Brendan R. Cronin* (on brief).

For Appellee: *Captain Meredith M. Picard* (argued); *Colonel Tania M. Martin* and *Captain Allison Rowley* (on brief); *Major Michael E. Korte*.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY and Judge SPARKS joined. Judge MAGGS filed a separate concurring opinion, in which Judge RYAN joined.

———————

Judge OHLSON delivered the opinion of the Court.

Contrary to Appellant's pleas, a military judge sitting as a general court-martial convicted Appellant of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).[1] The military judge sentenced Appellant to confinement for eight years, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence and credited Appellant with ninety days of confinement credit.

---

[1] The military judge found Appellant not guilty of a second specification of sexual assault in violation of Article 120, UCMJ.

The United States Army Court of Criminal Appeals (CCA) ordered a factfinding hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to determine whether Appellant had been subject to the personal jurisdiction of a court-martial at the time of his military trial. The *DuBay* military judge found that the military had indeed retained personal jurisdiction over Appellant. The CCA agreed and affirmed the findings and sentence. After granting Appellant's request for en banc reconsideration, the CCA again affirmed the findings and sentence.

We granted review on the following issue: "Whether Appellant was subject to court-martial jurisdiction." *United States v. Christensen*, 77 M.J. __, __ (C.A.A.F. 2018) (order granting review). We conclude that on the specific facts of this case, there was no personal jurisdiction over Appellant at the time of his military trial. Accordingly, we vacate the CCA's decision.

## I. Background

### A. Facts

On March 6, 2013, Appellant's unit—the 3rd Infantry Division at Fort Stewart, Georgia—recommended and initiated his administrative separation from the Army for his failure to complete an alcohol abuse rehabilitation program. Shortly thereafter, Appellant was arrested by civilian authorities for a suspected sexual assault involving another soldier and he was placed in civilian confinement. On March 27, the separation authority approved Appellant's administrative separation from the Army. A sergeant from the unit was assigned to clear Appellant from post while Appellant was in civilian confinement.

The sergeant fully cleared Appellant from post on April 17 and Appellant's identification card was taken from him. Until that time, noncommissioned officers (NCO) from Appellant's unit had visited him approximately once a week while he was in civilian confinement. However, once Appellant finished the last of his clearance paperwork, the last NCO to visit him in April told Appellant he was " 'out of the Army now' " and wished him good luck. Appellant would not see anyone from his unit again until December.

Also on April 17, the local Defense Finance and Accounting Service (DFAS) sought to compute Appellant's final pay, but could not do so because of the way Appellant's confinement status was coded in the system. In order for the code to be changed to a status where the local DFAS could conduct the final accounting of pay, Appellant's case needed to be sent to DFAS Indianapolis. As of April 30, Appellant's Leave and Earning Statement reflected that he owed the Army $1,148.51.

Appellant's discharge orders listed his discharge date as April 17. Appellant's Department of Defense Form 214, Certificate of Release or Discharge from Active Duty (DD Form 214, Aug. 2009), was completed on April 18. The transition center mailed Appellant's DD Form 214 to him on April 19, which his father received on April 23.

On April 25, the chief of justice at Fort Stewart e-mailed the local DFAS and requested that it stop the accounting of Appellant's final pay, believing that doing so would permit the Army to exercise court-martial jurisdiction over Appellant. The chief of justice acted on his own authority and without coordinating with anyone in command.[2] Further, neither he nor the OSJA contacted Appellant to let him know that they were halting his final pay. At the jurisdiction motions hearing, the chief of justice testified that he wanted to have the ability to exercise military jurisdiction over Ap-

---

[2] The chief of justice testified as follows:

> [Defense counsel]: You were acting without command direction at that point. You were acting on your own authority as the Chief of Justice?
>
> [Witness]: Yes.
>
> ….
>
> [Defense counsel]: You're acting with no guidance from the command, just with coordination inside the OSJA [Office of the Staff Judge Advocate]?
>
> [Witness]: Up to that point, I had not even coordinated that upward. At that point, one, I don't work for the command that was separating him. At that point, I felt like the decision was not the correct one at the division level, and so I asked to stop it. So, yes, I was the one that did that.

pellant until he could "confirm that the civilians were going to prosecute this [sexual assault case] in a way that we felt was appropriate."

When the chief of justice initially reached out to the transition center about Appellant's status, an employee responded that "everything has been completed and [Appellant] is out of the Army. Sorry." The chief of justice replied that because Appellant's "DFAS account is on hold and final accounting of pay has not been completed … the Army has not lost its ability to act on this Soldier."

On or about May 2, the local DFAS received the formal notification to halt Appellant's final accounting of pay. The local DFAS notified DFAS Indianapolis, which still had Appellant's case. DFAS Indianapolis closed Appellant's case without changing the code regarding his confinement status.

On May 14, the brigade rear detachment commander e-mailed a member of the OSJA seeking clarification about Appellant's status. He stated: "On the one hand, I'm tracking him as still incarcerated down-town, awaiting his grand jury, and separated from the army through [an administrative discharge]. [However,] I've also heard that the [administrative discharge] has been 'held up' by legal." The OSJA responded that the office halted the final accounting of pay and recommended continuing to halt the pay until it was certain the local authorities would properly prosecute the sexual assault case. Sometime later in May, the brigade rear detachment commander instructed the OSJA to continue to halt the final accounting of Appellant's pay.

The civilian authorities released Appellant on bond to a substance abuse rehabilitation facility on May 14. Appellant had not received any notification that he was entitled to medical care or other military benefits as an active duty member after his outprocessing in April 2013 and Appellant's family used private funds to pay for Appellant's rehabilitation and dental care.[3] In October and November, Appellant received letters from the Department of Veterans

---

[3] When asked why he did not seek to have the Army pay for his rehabilitation or his dental work, Appellant responded, "I didn't think I was in the Army."

Affairs and the Veterans' Group Life Insurance program outlining his benefits as a veteran and noting his transition to veteran status.

Despite the actions of the chief of justice beginning in April 2013, it was not until August or September when the brigade commander formally requested a revocation of Appellant's DD Form 214. Then on September 26, the Government preferred one charge and specification against Appellant. On September 30, the soldier processing center voided Appellant's DD Form 214 and revoked his discharge. However, it was not until December that anyone from Appellant's unit notified him that he was still considered a member of the armed forces and that he was going to be court-martialed.

The reason Appellant's unit decided to court-martial him regarding the sexual assault case was because the civilian authorities were "looking to plea him down to probation and a much lesser charge." A judge advocate from the OSJA noted in an e-mail:

> We have [been] working the last two months to get [Appellant] out of the civilian system without them completely dropping the case and also keep him in rehab while he in-processes, goes to his Art[icle] 32[, UCMJ] hearing, arraignment, and trial…. However the continuing rehab is not going to work, the Army would have to pay for it and currently he is paying.

On December 12, the Government preferred an additional charge with two specifications against Appellant. Two military police officers then arrested Appellant at the civilian rehabilitation facility. It was the first time since April that anyone from Appellant's unit had visited or communicated with him.

Once Appellant was again in military control, he had difficulty using many of the facilities that would be readily available to active duty soldiers—such as the dining hall—because he was not on the roster of active duty military personnel. He likewise did not have an identification card, as-

signed quarters, or any of his own uniforms.[4] Moreover, Appellant was not paid from April 2013 until January 2014, when his pay was restarted. The charge against Appellant was referred on January 23, 2014.

## B. *DuBay* Ruling

The *DuBay* military judge relied on *United States v. Hart*, 66 M.J. 273, 277 (C.A.A.F. 2008), and 10 U.S.C. § 1168(a) (2012), in concluding that in personam jurisdiction over a military servicemember is not terminated until all three of the following criteria are met: (1) delivery of a DD Form 214 discharge certificate; (2) completion of the clearance process; and (3) a final accounting of pay. Since neither party disputed that Appellant received his DD Form 214 and completed the clearance process, the *DuBay* military judge focused solely on the "final accounting of pay." He found that there was no final accounting of pay, and thus there was personal jurisdiction over Appellant.

## II. Applicable Law

We review issues of personal jurisdiction de novo, "accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record." *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000).

"As this court recognized long ago, 'It is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent s[o]me saving circumstance or statutory authorization.'" *Hart*, 66 M.J. at 275 (quoting *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985)). However, the UCMJ does not state when a servicemember's discharge from the armed forces becomes effective for jurisdictional purposes, and thus does not specifically address when a servicemember is no longer subject to being court-martialed. In making this determination, this Court has instead looked to 10 U.S.C. §§ 1168 and 1169 "for

---

[4] Appellant slept in the Charge of Quarters room and wore another soldier's uniform that was dirty and "full of cigarette butts."

*guidance* as to what is required to effectuate discharge." *Hart*, 66 M.J. at 275 (emphasis added).[5]

Based on these statutory provisions, this Court has identified three criteria to consider when determining whether a servicemember's discharge has been finalized for jurisdictional purposes: (1) the delivery of a discharge certificate (a DD Form 214); (2) a "final accounting of pay"; and (3) the completion of the "clearing" process that is required under service regulations. *Id.* at 276–79. Importantly, however, we have explicitly held that this guidance is "not binding when we find that [it] go[es] against reason or policy." *United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015).

## III. Analysis

Consistent with our recent decision in *Nettles*, we hold that Appellant was not subject to court-martial jurisdiction at the time of his military trial. To hold otherwise would clearly go against "reason or policy." *Id.* In reaching this conclusion, we have considered the totality of the following circumstances.

First, Army policy declares that a discharge becomes "effective at 2400 [hours] on the date of notice of discharge to the Soldier." Dep't of the Army, Reg. 635-200, Personnel Separations, Active Duty Enlisted Administrative Separations § V, para. 1-29.*c.* (June 6, 2005, rapid action revision issue date, Sept. 6, 2011). Here, Appellant's father received Appellant's DD Form 214 on April 23, 2013.

Second, the Government did not act in a timely manner when attempting to revoke the discharge. The command waited more than four months *after* the brigade rear detachment commander instructed the OSJA to halt Appellant's pay before revoking Appellant's DD Form 214. The Government likewise waited months to restart Appellant's pay and military benefits, conduct command visits, and

---

[5] *See also United States v. Watson*, 69 M.J. 415, 417 (C.A.A.F. 2011) ("[This] Court has identified three *generally applicable* elements of a valid discharge." (emphasis added)); *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989) ("We read [§§ 1168 and 1169] as *generally* requiring that three elements be satisfied to accomplish an early discharge." (emphasis added)).

communicate with the Appellant about his status. During the intervening months, the command treated Appellant as a civilian.

Third, in light of the attendant circumstances, Appellant held an objectively reasonable belief that he was no longer in the Army. Not only had Appellant received his DD Form 214, cleared post, turned in his military identification card, and been told by the unit's official representative that he was "'out of the Army now,'" but for months afterward he received no visits from his command, used private funds for his rehabilitation facility and dental work, received no communication from the unit informing him that his status was in question, received no pay or military benefits, did not have his DD Form 214 revoked, received correspondence from the Department of Veterans Affairs about the benefits he now was entitled to receive as a veteran, and expected no final pay because he owed the government money.

Fourth, although it concedes the fact that Appellant had received his DD Form 214 and had cleared from post, the Government cites our decision in *Hart* as binding precedent and latches onto the argument that Appellant's discharge was not effectuated because a final accounting of pay had not been conducted. However, in analyzing the Government's argument, we begin by reiterating that the three criteria derived from 10 U.S.C. §§ 1168 and 1169 serve as *guidance*—not as *prerequisites*—when it comes to determining whether a discharge has been effectuated for jurisdictional purposes. *Hart*, 66 M.J. at 277 n.5 ("We have relied on 10 U.S.C. § 1168(a) for *guidance* in determining the moment of discharge for purposes of UCMJ jurisdiction ...." (emphasis added)).[6] Next, in *Hart* we expressly noted the following: "This case does not involve any delay in the processing of Hart's separation pay." *Id.* Because the instant case did involve a delay in the processing of separation pay, *Hart* is

---

[6] To be clear, if all three of the criteria cited above have been met, then an accused unequivocally is no longer subject to court-martial jurisdiction. *Nettles*, 74 M.J. at 290. However, if one or more of these criteria have not been fully met, then the military trial judge must consider the totality of the circumstances in making a jurisdictional determination. *Id.* at 291.

readily distinguishable. And finally, in *Hart* we explicitly stated as follows: "We have not had occasion to address the jurisdictional effects if payment [to a discharged servicemember was] not accomplished within a reasonable time frame established by applicable regulation for completion of the payment process." *Id*. Here, the final accounting of pay was "not accomplished within a reasonable time frame."[7] Thus, *Hart* is not dispositive of the case before us.

Unlike *Hart*, however, our recent decision in *Nettles* is directly on point. In *Nettles* we held that the guidance and criteria derived from § 1168 are "not binding when we find that they go against reason or policy." *Nettles*, 74 M.J. at 291. And under the totality of the circumstances in the instant case, it is eminently clear that "reason [*and*] policy" dictate our conclusion that the military retained no jurisdiction over Appellant at the time of his court-martial.

## IV. Decision

The decision of the United States Army Court of Criminal Appeals is vacated. The findings and sentence are set aside and dismissed.

---

[7] We note that this failure to act "within a reasonable time frame" was not the result of typical bureaucratic delays and miscues. Rather, the delay was due largely to the unilateral action of the chief of justice at Fort Stewart. He was the one who initially halted Appellant's pay process without command authority, and he did so with the express intention of manipulating the finance process in such a manner as to maintain jurisdiction over Appellant until and unless the chief of justice decided he was satisfied with the civilian prosecutor's handling of the case. These facts weigh against the Government's position in this case.

Judge MAGGS, with whom Judge RYAN joins, concurring.

A servicemember who has been discharged from the military is no longer subject to trial by court-martial. *See* Article 2(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 802(a) (listing persons who are subject to court-martial); *see also Toth v. Quarles*, 350 U.S. 11, 23 (1955) (holding that Congress cannot constitutionally extend court-martial jurisdiction to former servicemembers). In many cases, however, determining when a discharge has occurred is difficult. Because the UCMJ does not address the question of when a discharge is complete, we have had to look elsewhere for the answer. In *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985), the government argued that this Court should "permit the Secretary of the Army, by regulation, to establish the moment of discharge." We declined to do so. Shortly afterward, we developed our own three-part test for determining when a discharge occurs. We held that a discharge generally requires delivery of a valid discharge certificate, a final accounting of pay, and the completion of a clearing process under appropriate service regulations. *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989)*; accord United States v. King*, 42 M.J. 79, 80 (C.A.A.F. 1995).

Although we have cited and applied this three-part test for many years, recent cases reveal significant dissatisfaction with some of its results. In *United States v. Hart*, 66 M.J. 273 (C.A.A.F. 2008), two dissenting judges asserted that the three-part test should not be applied as "an absolute rule." *Id.* at 280 (Effron, J., joined by Stucky, J., dissenting). In *United States v. Nettles*, 74 M.J. 289 (C.A.A.F. 2015), this Court initially considered the three-part test, but decided not to apply the test to a reservist based on a newly crafted "reason or policy" exception. *Id.* at 291. Instead, the Court turned to "the statute that actually discharged" the reservist, 10 U.S.C. § 14505 (2012),[1] for the answer on when a discharge occurred. *Id.* at 292. The present case goes further and applies the "reason or policy" exception in *Nettles* to an

---

[1] This statute specified the exact date of discharge for a "captain on the reserve active-status list" who was not selected for promotion.

active duty servicemember. We decide today that the totality of circumstances, including Army policy, Government delay, and Appellant's reasonable expectations, preclude strict reliance on the three-part test.

While the "reason or policy" exception may prevent the three-part test from producing undesirable results, relying on the exception has its own difficulty. The exception may leave military judges with insufficient guidance in deciding whether a court-martial may go forward. Uncertainty has significant costs. In this case, for instance, Appellant was tried, found guilty, and sentenced by a court-martial that we only now determine had no jurisdiction.

These considerations suggest that the Court may have made a wrong turn in *Howard* and that we should reconsider our approach for determining when a servicemember has been discharged for the purposes of terminating court-martial jurisdiction. One possible alternative would be to ask first whether an existing statute or regulation specifies when a discharge has occurred. If such a statute or regulation exists, the Court would simply apply that statute or regulation. In a case in which no specific statute or regulation exists, or in the case that the Court concludes that the applicable regulation is invalid, then, and only then, would we need to turn to the judicially created three-part test and considerations of "reason or policy."

For example, when we decided *Nettles*, we might have started and ended our analysis with 10 U.S.C. § 14505. Because the statute specified when the discharge occurred, we would not have had to consider either the three usual criteria or the "reason or policy" exception. Similarly, in this case, we might have begun by considering Dep't of the Army, Reg. 635-200, Personnel Separations, Active Duty Enlisted Administrative Separations § V, para. 1-29.*c.* (June 6, 2005, rapid action revision issue date, Sept. 6, 2011), which provides, with certain exceptions not relevant here, that a discharge "is effective at 2400 on the date of notice of discharge to the Soldier."[2] Only if this regulation were

---

[2] The Secretary of the Army has claimed authority to promulgate this regulation under 10 U.S.C. § 1169(1) (2012), which pro-

somehow invalid would we need to resort to our judicially created three-part test and its exception for determining when Appellant's discharge occurred.

This alternative approach would have jurisprudentially firmer underpinnings than our current approach because it would prioritize statutes and regulations over judge-made law. It would address concerns about undesirable results by leaving most policy questions about when discharges should occur to Congress and the service secretaries. The alternative approach also might promote greater certainty than the current approach by subordinating inherently uncertain questions of "reason or policy."

Despite these considerations, this case is not a proper vehicle for overruling our precedents. The parties have not asked us to change how we decide when a servicemember has been discharged. And the alternative approach of looking first to statutes and regulations most likely would produce the same result in this case as the Court has reached under our existing precedents. The only regulation cited by the parties would indicate that Appellant was indeed discharged before his court-martial, and thus, no military jurisdiction existed over him. I therefore concur in the Court's opinion, which applies our existing precedents, and I leave reconsideration of the Court's long-standing approach to determining when a discharge occurs for the purposes of terminating court-martial jurisdiction for another case.

---

vides: "No regular enlisted member of an armed force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary concerned." The regulation appears to be a successor of the regulation that the Government asked this Court to follow in *Howard*.