*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Kondali A. KANGHA**
Electrician's Mate Fireman Recruit (E-1), U.S. Navy
Appellant

**No. 201900202**

Decided: 26 October 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Jonathan T. Stephens (arraignment)
Aaron C. Rugh (trial)

Sentence adjudged 15 March 2019 by a general court-martial convened at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for 24 months and a bad-conduct discharge.

For Appellant:
*Captain Mary Claire Finnen, USMC*

For Appellee:
*Lieutenant Jennifer Joseph, JAGC, USN*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

Chief Judge MONAHAN delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge DEERWESTER joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

MONAHAN, Chief Judge:

Appellant was convicted, consistent with his pleas, of two specifications of attempted wrongful appropriation of a value more than $500, and four specifications of wrongful appropriation of a value more than $500, under Articles 80 and 121, respectively, of the Uniform Code of Military Justice [UCMJ].[1]

Appellant raises one assignment of error [AOE]: the court-martial lacked personal jurisdiction over him because he was discharged from active duty before the court-martial convened, and the convening authority never requested authority from the Secretary of the Navy to refer charges after Appellant had retired.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

### A. Appellant's Special Court-Martial

Previously, at a special court-martial, Appellant was convicted of attempt to defraud, wrongful appropriation, and making checks without sufficient funds. On 6 December 2016, he was sentenced to reduction to E-1, forfeiture of $1,044 per month for two months, 60 days' restriction, and 90 days' hard labor without confinement.

During this previous court-martial, Appellant unsuccessfully filed a Motion to Dismiss for lack of personal jurisdiction. The factual background for that motion was as follows:

In or about November 2015, law enforcement notified Appellant's command, Naval Medical Center San Diego [NMCSD] that he was suspected of uttering checks from closed accounts. The next month, Appellant began

_____

[1] 10 U.S.C. §§ 880, 921.

[2] This AOE was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Physical Evaluation Board [PEB] processing. On 8 March 2016, Appellant signed a "Page 13"[3] from his command (issued "by direction" of the commanding officer), acknowledging that he was being placed on legal hold pending the results of an investigation and possible legal proceedings.

The next day, Commanding Officer, NMCSD personally signed a letter that notified the local Personnel Support Activity Detachment [PSD San Diego] to place Appellant in a legal hold status due to pending court-martial charges. In April 2016, NMCSD withdrew the original charges that had been preferred against Appellant so as to add additional charges.

When Appellant's end of active duty obligation of service [EAOS] passed in May 2016, a representative of PSD San Diego emailed NMCSD to request an update of Appellant's current status. Appellant's command confirmed his continued legal hold status.

On 1 July 2016, Navy Personnel Command [NPC] released a message that placed Appellant on the Temporary Disability Retired List [TDRL]. In response to this message, PSD San Diego initiated the process of placing Appellant on the TDRL, and did not contact NMCSD to de-conflict the legal hold issue. On 11 July 2016, a petty officer from NMCSD's Human Resource Department instructed Appellant to complete certain paperwork in order to "ensure a smooth transition from military service."[4] Throughout July 2016, Appellant completed his administrative check-out process with NMCSD.

Sometime that month, NMCSD transmitted an electronic separation package to PSD San Diego. Appellant's immediate chain of command, to include his department head and director, signed the separation package prior to its submission to PSD San Diego. One form in the separation package included a signature block for Appellant's "CO or Designee." However, this block was signed by someone other than Appellant's commanding officer or executive officer, and the record of trial does not indicate what position the signatory held at NMCSD. Moreover, Appellant's command master chief did not sign his separation package and the command's legal office was not required to sign the separation package. PSD San Diego began processing

---

[3] Dep't of the Navy, Naval Personnel Form 1070/613, Administrative Remarks (Aug. 2012) is commonly referred to as a "Page 13." It is used to provide a chronological record of significant miscellaneous information, which is not provided elsewhere in the official military personnel file, or to provide more detailed information required to clarify entries in other military human resource documents. *See* Dep't of the Navy, Naval Military Personnel Manual art. 1070-320 (Ch-69, Oct. 21, 2019).

[4] App. Ex. V, Encl. F at 1.

Appellant for transfer to the TDRL based on the message it had received from NPC and the separation package it had received from NMCSD.

On 29 July 2016, NPC issued Appellant retirement orders that listed an effective discharge date of 29 August 2016. Also on 29 July 2016, NMCSD preferred and referred charges against Appellant for violations of Articles 80, 120, and 123a of the UCMJ. On 1 August 2016, a paralegal from NMCSD emailed a representative from the NPC TDRL office to provide notification that Appellant was on legal hold. The paralegal asked the NPC TDRL office representative if Appellant's TDRL would be canceled or put on hold. Sometime prior to 28 August 2016, the paralegal spoke to the NPC TDRL office representative, who provided confirmation that Appellant's TDRL had been canceled and that the cancellation message was pending release. On 29 August 2016, Appellant was arraigned at his special court-martial.

On 1 September 2016, PSD San Diego issued Appellant a Certificate of Release or Discharge from Active Duty [DD-214], which purportedly discharged Appellant on 29 August 2016. Appellant did not inform NMCSD that he had been issued the DD-214 and he continued to work. Shortly after receiving his DD-214, Appellant also received his final accounting of pay. On 7 September, NPC released the message that canceled Appellant's TDRL. On 8 September 2018, the NMCSD Command Judge Advocate [CJA] emailed NPC to raise the issue that NPC had failed to send[5] the message that canceled Appellant's TDRL, and that PSD San Diego had erroneously discharged Appellant despite his being placed on legal hold. In this email the CJA stated unequivocally, "My primary issue is our desire to court[-]martial [Appellant]."[6] On 14 September 2016, NPC Legal Counsel issued a memorandum stating that Appellant's DD-214 was issued in error and "was therefore invalid."

**B. Appellant's General Court-Martial**

Following his December 2016 special court-martial, Appellant continued to work at NMCSD and receive military pay and allowances. In or about February 2017, while he remained on legal hold related to the misconduct that resulted in his special court-martial, NMCSD requested NCIS investigate allegations that Appellant had borrowed or attempted to borrow large sums of money from several Sailors. The subsequent NCIS investigation

---

[5] The CJA was apparently unaware that NPC had released the message canceling Appellant's TDRL, albeit late, the previous day.

[6] App. Ex. VI, Encl. 6 at 1.

yielded information that Appellant had borrowed or attempted to borrow large sums of money from several Sailors under false pretenses, that Appellant was using this money to gamble at a local casino, and that he was not paying back those loans. Ultimately, the results of this investigation formed the basis for new charges to be preferred, which were sent to a preliminary hearing and ultimately referred to general court-martial.

At that general court-martial, which is now before us on appeal, Appellant once again filed a Motion to Dismiss for lack of personal jurisdiction, based on the same set of facts that formed the basis of his unsuccessful challenge of personal jurisdiction at his special court-martial. However, before the military judge presiding over his general court-martial issued a ruling on Appellant's motion, Appellant entered into a pretrial agreement with the convening authority. In accordance with the pretrial agreement, Appellant and the Government signed a stipulation of fact.[7] In the stipulation, Appellant admitted to the various wrongful appropriation and attempted wrongful appropriation offenses that were referred to general court-martial. The dates of these offenses spanned from on or about September 2015 to on or about February 2017. Appellant further stipulated that he was "on active duty during all events relating to the offenses" to which he was pleading guilty. However, the stipulation also stated, "I previously filed a motion to dismiss for lack of personal jurisdiction in this court-martial, though I am entering this plea with the understanding that my jurisdiction issue is not waived and may be reviewed on appeal."[8]

During the providence inquiry, the military judge elicited the following facts from Appellant: that on 8 March 2016, NMCSD provided him with a Page 13 informing him that he had been placed on legal hold prior to his EAOS of 14 May 2016; that on 1 July 2016, NPC released a message stating that he should be placed on the TDRL; that on 29 July 2016, he received official orders from NPC that listed his effective retirement date as 29 August 2016; that on 1 September 2016, he received a DD-214 from PSD; that on 7 September 2016, NPC released another message that cancelled Appellant's transfer to the TDRL; that on 12 September 2016, he received retirement pay in the amount of about $97.80; that since the September 2016 cancellation of his orders to the TDRL, he had received active duty pay; that he had been performing military duties since that time; that Appellant agreed he was on active duty on the date of his guilty plea and sentencing hearing; and that he

---

[7] Pros. Ex. 1.

[8] *Id.* at 1.

had not been legally discharged or released from active duty since the cancellation of his orders to the TDRL.[9] Although the military judge never issued a ruling on Appellant's motion to dismiss for lack of personal jurisdiction, after eliciting these facts from Appellant that established jurisdiction, he subsequently accepted Appellant's pleas of guilty and imposed a sentence against him.

## II. DISCUSSION

### A. The General Court-Martial had Personal Jurisdiction over Appellant

*1. Standard of review and the law*

We review questions of jurisdiction *de novo*.[10]

Article 2, UCMJ, confers court-martial jurisdiction over a fairly wide range of individuals, to include "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment . . . ."[11]

A discharge terminates personal jurisdiction after there is "(1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a 'clearing' process as required under appropriate service regulations to separate the member from military service."[12]

With regard to the first requirement, no delivery can be effective if it is contrary to expressed command intent.[13]

*2. The delivery of Appellant's discharge certificate was not effective because he had previously been placed on legal hold and his command did not intend for him to be discharged*

Because Appellant received a final accounting of pay and underwent the NMCSD and PSD San Diego clearing process for separation/retirement, only

---

[9] R. at 262-63.

[10] *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012).

[11] UCMJ art. 2(a)(1).

[12] *United States v. Nettles*, 74 M.J. 289, 290 (C.A.A.F. 2015) (quoting *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006)).

[13] *Nettles*, 74 M.J. at 291.

the first requirement, "delivery" is at issue.[14] Although PSD San Diego delivered a DD-214 to Appellant prior to his special court-martial, we conclude *in personam* jurisdiction was not lost prior to the special court-martial and continued through the general court-martial that is the subject of this appeal because the purported discharge was invalid. Specifically, the DD-214 was not issued consistent with applicable Service regulations because its issuance was directly contrary to the NMCSD Commanding Officer's intent.

On 3 March 2016, Appellant's command notified PSD San Diego of his commanding officer's intention to place him on legal hold. On 8 March 2016, Appellant signed a Page 13, acknowledging that he had been placed on legal hold. The next day, Appellant's commanding officer personally signed a letter to PSD San Diego to provide notice of Appellant being placed in a legal hold status due to pending court-martial charges. NMCSD never rescinded the Page 13. Indeed a paralegal from the NMCSD legal office contacted the NPC TDRL office on 1 August 2016, just two days after NPC issued Appellant retirement orders to inform NPC directly that Appellant was on legal hold. Moreover, on 8 September 2016, only a week after Appellant had received his DD-214, the NMCSD CJA emailed NPC to raise the issue that NPC had failed to send the message that canceled Appellant's TDRL, and that PSD San Diego had erroneously discharged Appellant despite his being placed on legal hold. In this email the CJA stated unequivocally, "My primary issue is our desire to court[-]martial [Appellant]."[15]

Certainly, NMCSD's handling of the issues surrounding the preservation of personal jurisdiction was not flawless. The command failed to inform the NPC TDRL office in March 2016 that Appellant was being placed on legal hold as it should have pursuant to Service regulation.[16] If it had done so, Appellant's PEB process would have been abated pending the outcome of his special court-martial case. Furthermore, a petty officer from the NMCSD

---

[14] *See id.* at 290-91.

[15] App. Ex. VI, Encl. 6 at 1.

[16] The Service regulation that governed at the time provided in pertinent part "Processing for punitive discharge and processing for administrative discharge for misconduct takes precedence over processing for disability. For cases already being considered at the PEB, once the PEB is formally notified that punitive action has been initiated, disability case processing is immediately suspended pending the outcome of the punitive action. . . ." Dep't of the Navy, Secretary of the Navy Instr. 1850.4E, Department of the Navy Disability Evaluation Manual, encl. 1, para. 1002.b (Apr. 30, 2002).

Human Resource Department instructed Appellant to complete his separation paperwork, which was initialed by Appellant's intermediate chain of command, to include his department head and director. However, we conclude that these actions were taken contrary to the intent of the commanding officer, who did not sign Appellant's separation package and did not otherwise rescind Appellant's legal hold. Any doubt on the issue of command intent is resolved in favor of the Government due to the subsequent actions taken by the NMCSD legal office to put NPC on notice that Appellant was on legal hold and to request that his placement on the TDRL be held in abeyance pending the results of the disciplinary action being taken against him. Therefore, it is clear to us that personal jurisdiction over Appellant was not terminated prior to his special court-martial.

Moreover, the conclusion that Appellant remained on active duty and subject to the UCMJ is strengthened by the period of time after his special court-martial through the date of his general court-martial that is the subject of this appeal. During this time, while still on legal hold, Appellant continued to perform military duties and to receive military pay. The military judge who accepted Appellant's pleas of guilty confirmed these facts with him as part of the providence inquiry. Thus, we readily find that at all times relevant to the case before us, Appellant was subject to personal jurisdiction pursuant to Article 2(a)(1), UCMJ.[17]

---

[17] In the alternative, we find that at all relevant times with regard to Appellant's general court-martial, personal jurisdiction was preserved pursuant to Article 2(c), UCMJ, which provides:

> Notwithstanding any other provision of law, a person serving with an armed force who—
>
> (1) submitted voluntarily to military authority;
>
> (2) met the mental competence and minimum age qualifications of sections 504 and 505 of [Title 10 United States Code] at the time of voluntary submission to military authority;
>
> (3) received pay or allowances; and
>
> (4) performed military duties;
>
> is subject to [the UCMJ] until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned.

**B. Errors in the Record of Trial**

Appellant is entitled to have court-martial records that correctly reflect the result of this proceeding.[18] Although not raised as AOEs, we noticed three issues in the record of trial that are worthy of corrective action.

*1. The convening authority's action and results of trial incorrectly state that DNA collection is required*

Both the convening authority's action and the results of trial state that collection of Appellant's DNA is required by Dep't of Defense Instr. 5505.14, Deoxyribonucleic Acid (DNA) Collection Requirements for Criminal Investigations, Law Enforcement, Corrections, and Commanders (Dec. 22, 2015) (Change 1, Mar. 9, 2017) [DoDI 5505.14]. Appellant was convicted of two specifications of attempted wrongful appropriation of a value more than $500 and four specifications of wrongful appropriation of a value more than $500. The maximum punishment for each specification includes confinement for six months. However, the offense of wrongful appropriation of a value more than $500 would not constitute a felony under the United States Code because the maximum punishment for that offense does not permit a sentence of confinement for more than one year be imposed. The same analysis applies to the offense of attempted wrongful appropriation of a value of more than $500. Consequentially, neither offense is reflected on enclosure (3) to DoDI 5505.14's list of "UCMJ Offenses Requiring DNA Sample Submission." Despite the fact that Appellant was convicted of several of these offenses, because none of them would constitute a felony under the United States Code, DoDI 5505.14 does not require Appellant's DNA to be collected. Therefore, in our decretal paragraph we will order correction of the convening authority's action and results of trial to clarify that DNA collection is *not* required.

*2. The convening authority's action does not reflect the modification to the charge sheet with regard to the offenses of wrongful appropriation and attempted wrongful appropriation*

The convening authority's action reflects that Appellant pleaded guilty and was found guilty of the offenses of attempted wrongful appropriation and wrongful appropriation, by exceptions and substitutions as the lesser included offenses of attempted larceny and larceny, respectively. This language tracks with Appellant's pretrial agreement. However, prior to the entry of

---

[18] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

Appellant's guilty pleas, the military judge recommended that a simpler approach would be for the charge sheet to be amended to reflect the offenses of attempted wrongful appropriation and wrongful appropriation rather than doing so by exceptions and substitutions. The parties agreed with the military judge's recommendation and the charge sheet was amended accordingly. Therefore, in our decretal paragraph we will order correction of the convening authority's action to reflect that Appellant entered pleas of guilty to and was found guilty of offenses of attempted wrongful appropriation and wrongful appropriation, without utilizing exceptions and substitutions.

*3. The convening authority's action purports to suspend vice disapprove confinement in excess of six months as required by the pre-trial agreement*

Appellant's pretrial agreement provided, "any confinement in excess of six months including contingent confinement will be disapproved." However, as a result of an apparent scrivener's error, the convening authority's action purports to suspend as opposed to disapprove adjudged confinement in excess of six months. Accordingly, in our decretal paragraph we will order correction of the convening authority's action to ensure that Appellant receives the full benefit of his agreement.

## III. CONCLUSION

After careful consideration of the entire record of trial, and the briefs from both parties, we have determined the approved findings and sentence are correct in law and fact and find no error materially prejudicial to Appellant's substantial rights occurred.[19] However, we order correction of the convening authority's action and results of trial in this case as discussed above to ensure Appellant receives records that correctly reflect his proceedings.

The findings and sentence as approved by the convening authority are **AFFIRMED.**[20]

---

[19] UCMJ arts. 59, 66.

[20] In affirming the findings and sentence, we note that the only clemency requested by trial defense counsel on behalf of Appellant was commutation of his sentence to confinement to time served. Because the adjudged sentence included a bad conduct discharge, this requested relief was not possible by operation of law and, thus, outside the convening authority's authority. *See* Art. 60(c), UCMJ. In a case where trial defense counsel could have requested clemency that was within the authority of the convening authority, but instead requested clemency that was not possible by operation of law, we have remanded for new post-trial processing with

Senior Judge STEPHENS and Judge DEERWESTER concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

conflict-free counsel. *See United States v. Marquardt*, No. 201600265, 2017 CCA Lexis 95 (N-M. Ct. Crim. App. Feb. 14, 2017) (unpub. op.). However, because Appellant was already an E-1, was past his EAOS, and did not receive any adjudged fines, the convening authority was without authority to grant any clemency. Therefore, under the unique circumstances of this case we discern no prejudice and no need to remand for new post-trial processing.