*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
GROSS, de GROOT, and KORN
Appellate Military Judges

_____

**In Re Eric J. PENAROMERO**
Sergeant (E-5), U.S. Marine Corps
*Petitioner*

_____

**UNITED STATES**
*Respondent*

_____

**No. 202600018**

Decided: 27 March 2026

Review of Petition for Extraordinary Writ in the Nature of a Writ of
Mandamus to Disqualify the Military Judge

Military Judge:
Stacy M. Allen

Before a general court-martial convened at Marine Corps Base Quantico, Virginia.

For Petitioner:
*Captain Luke W. Lockhart, USMC*
*Major Theodore H. Massey, USMC*

For Respondent:
*Captain Jacob R. Carmin, USMC*
*Major Mary Claire Finnen, USMC*

Senior Judge GROSS delivered the opinion of the Court, in which Judge de GROOT and Judge KORN joined.

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

GROSS, Senior Judge:

Petitioner stands accused of unauthorized absence and sexual assault in violation of Articles 86 and 120, Uniform Code of Military Justice (UCMJ).[1] After arraignment, Petitioner moved to disqualify the military judge pursuant to Rule for Courts-Martial (R.C.M.) 902(a) and (b). The military judge denied the motion in an oral ruling. Petitioner now seeks relief from this Court in the form of a writ of mandamus directing the disqualification of the military judge. Because we find that Petitioner has, under the unique circumstances of this case, demonstrated his clear and indisputable right to relief, we grant the writ of mandamus and order the military judge disqualified.

## I. BACKGROUND

The Government preferred charges against Petitioner on 8 July 2024. Petitioner served on active duty in the Marine Corps from 18 July 2016 to 17 July 2020. Upon separation from active duty, Petitioner entered the Individual Ready Reserve (IRR). In December 2020, agents of the Naval Criminal Investigative Service (NCIS) opened an investigation into Petitioner based on an alleged disclosure he made during an interview with the Customs and Border Patrol, in which he implicated himself in the sexual assault of Sergeant L. B., USMC,[2] while he was on active duty. At some point after the investigation was opened, Sgt L.B. formed an attorney-client relationship with Major (Maj) Sierra, USMC, a Victims' Legal Counsel (VLC).

The military judge, Lieutenant Colonel (LtCol) Allen, prior to being assigned to the Navy-Marine Corps Trial Judiciary, served as the Chief VLC of

———

[1] 10 U.S.C. 886, 920.

[2] All names other than those of Petitioner, appellate counsel, and the military judge are pseudonyms.

the Marine Corps from 15 June 2024 to 30 May 2025.[3] In that position, she served as supervisory counsel for VLC who would occasionally call with questions regarding cases to which they were detailed.[4] However, LtCol Allen did not detail VLC to individual cases, as that authority rested with the regional VLCs.[5]

In March 2025, while LtCol Allen was serving as Chief VLC, Major Sierra told her that there was a case that may involve the Secretary of the Navy recalling a Marine who had disclosed that he had sexually assaulted someone during his service in the Marine Corps.[6] Major Sierra told LtCol Allen that the Government may be unsure of, or was going to look into, personal jurisdiction.[7]

After that conversation, the VLC Organization Attorney Advisor sent LtCol Allen an email inquiring about personal jurisdiction without mentioning a specific case.[8] The attorney advisor would routinely field questions from the VLCs in the Marine Corps regarding legal issues. Because the attorney advisor did not have prior military experience, he would sometimes reach out to LtCol Allen for military-specific questions that he received from counsel in the field.[9] The specific inquiry by the attorney advisor about asserting personal jurisdiction over a Marine in the IRR caused LtCol Allen to recall her previous conversation with Maj Sierra from a few days earlier.[10] The attorney advisor's email was a forward of an email he had previously sent to Maj Sierra indicating that he was looking into an IRR issue and that he had found some cases that appeared to indicate that there was no personal jurisdiction over someone in the IRR, but that those cases had been overruled by a subsequent case.[11] The attorney advisor did not ask LtCol Allen for any information or assistance in advising Maj Sierra.

Lieutenant Colonel Allen responded via email to the attorney advisor, recommending he review the case of *United States v. Nettles* and discussing the

---

[3] Fifth file of Official Audio from Audio R. at 16:03 (Dec. 11, 2025).

[4] *Id.* at 17:35.

[5] *Id.* at 16:22–23.

[6] First file of Official Audio from Audio R. at 24:15–24:46 (Jul. 10, 2025).

[7] *Id.*

[8] *Id.* at 26:00.

[9] *Id.* at 26:50–27:10.

[10] *Id.* at 27:30–38.

[11] Second file of Official Audio from Audio R. at 2:45–3:00 (Jul. 10, 2025).

factors that courts will look at in determining whether a court-martial has personal jurisdiction over an accused who is a member of the IRR.[12]

Prior to Petitioner's trial, the military judge held a conference under R.C.M. 802 with the parties. At that conference, the military judge disclosed the basic substance of her conversations with Maj Sierra and the attorney advisor as discussed above. The military judge advised the parties of the existence of the email with the attorney advisor and told the parties that she would attach the email to the record for potential appellate review but that it would be sealed without providing it to the parties.[13] The military judge invited questions from counsel and summarized these questions and her responses, but no transcript of this informal questioning was prepared.[14]

At arraignment, civilian defense counsel (CDC) questioned the military judge for approximately 18 minutes and asked her if she believed that a member of the public, fully informed of the facts, would find her to be fair and impartial in Petitioner's case.[15] The military judge responded saying that she would continue to answer questions, but if the parties intended to challenge her, she would ask for written filings so that she could consider the matters fully.

After arraignment, Petitioner filed a motion seeking the military judge's disqualification based upon her prior interaction with Maj Sierra in addressing the issue of personal jurisdiction.[16] The Government filed a response opposing the military judge's disqualification, arguing that Petitioner had not met his burden to show that the military judge was not fair and impartial. Central to the Government's argument was the fact that Petitioner had not produced any evidence in support of his position.[17]

After filing the motion, CDC moved to withdraw from the case. At the next session under Article 39(a), UCMJ, detailed trial defense counsel (TDC) sought to further voir dire the military judge. Although the military judge allowed

---

[12] *Id.* at 4:30–5:08; 74 M.J. 289 (C.A.A.F. 2015).

[13] App. Ex. IV.

[14] We once again take this opportunity to remind military judges and counsel that conferences under R.C. M. 802 are "not a proper vehicle for the development or resolution of disputed issues." *United States v. Pedicini*, No. 202400232, 2025 CCA LEXIS 55, at *24 (N-M. Ct. Crim. App. Feb. 13, 2025) (Gannon, J., dissenting) (unpublished).

[15] *Id.* session 3 5:45–6:15.

[16] App Ex. XII.

[17] App Ex. XIV.

TDC to ask questions, she advised him that she would require him to be tailored in his questions because the court "has been subjected to questions twice, both at the R.C.M. 802 conference and pretty extensive questions at arraignment."[18]

Trial defense counsel then sought to further question the military judge regarding the email that the military judge had previously referenced, attached to the record, and sealed. Trial defense counsel requested additional voir dire based on the fact that prior voir dire had been conducted by CDC whom Petitioner had previously released. The military judge agreed to permit limited further voir dire. As the military judge was responding to TDC's questions, Sgt L.B.'s new VLC, Maj Charlie, interrupted the military judge's response, saying "I do think that the [VLC Organization] at large has a privilege argument to raise here."[19]

The military judge's response was,

> No, at this point, the Court is shutting down questioning from defense counsel . . . . I am not sure what the relevance of some of this questioning is, and I do believe that perhaps you are potentially starting to stray into [VLC Organization] work product. And what I want to be very clear about is that while I understand and am going to be completely fair and impartial in this case, I also recognize that I do have prior obligations to the Victims' Legal Counsel Organization as well.[20]

The military judge then denied the motion to disqualify herself. This petition followed.

After receipt of Petitioner's brief, we granted Petitioner's request for a stay of proceedings and ordered the Government to produce: 1) the audio recordings of the proceedings in the case; 2) the sealed email contained within Appellate Exhibit IV; and 3) any written pleadings by any party or the VLC regarding recusal of the military judge.[21]

Prior to receipt of the items ordered produced, Maj Charlie filed a motion with this Court seeking to assert the attorney-client privilege over Appellate Exhibit IV. In the motion, Maj Charlie asserted the following: 1) that LtCol

---

[18] Audio 13:08–13:15 (Dec. 11, 2025).

[19] *Id*. at 18:05–1902.

[20] *Id*. at 19:08–19:40.

[21] Order Granting Stay of Proceedings and Compelling Production of Recording, one Sealed Exhibit, and Related Pleadings (Jan. 22, 2026).

Allen as Chief VLC communicated, via email, with the attorney advisor and Sgt L.B.'s VLC on the matter concerning Sgt. L.B. and Petitioner; 2) as Chief VLC, LtCol Allen had access to confidential material relating to the representation of clients; 3) LtCol Allen's email communications with the attorney advisor are privileged communications; and 4) Sgt L.B. never authorized her VLC or others within the VLC Organization to release their communications regarding her case to the Court.[22] On 24 February 2026, this Court, having reviewed the material produced pursuant to its order, Petitioner's brief, and VLC's written motion, ordered the Government to show cause why the petition for a writ of mandamus should not be granted.

The Government then responded to our order to show cause, requesting that we grant the petition for a writ of mandamus.

## II. DISCUSSION

**Under the unique circumstances of this case, Petitioner has met the burden for issuance of a writ of mandamus.**

### 1. Law

A petitioner seeking an extraordinary writ bears a heavy burden to show: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances.[23] Courts have repeatedly found that this standard is a high one that should be used sparingly. "The writ of mandamus is a drastic instrument which should be invoked only in truly extraordinary situations."[24] "This writ has traditionally been used 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' "[25]

Despite the very high standard for issuance of a writ of mandamus, military appellate courts have issued the writ, when warranted, to order the disqualification of a military judge under R.C.M. 902. In disqualifying the military judge in *Hasan v. Gross*, the Court of Appeals for the Armed Forces

---

[22] Victim's Rule 23(d) Motion to Appear for the Limited Purpose of Asserting Lawyer-Client Privilege at 1–2 (filed Feb. 20, 2026).

[23] *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004).

[24] *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983).

[25] *Brown v. United States*, 79 M.J. 833, 842 (N-M. Ct. Crim. App. 2020) (quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943))

(CAAF) noted, "In the military context, the appearance of bias principle is derived from R.C.M. 902(a): 'A military judge shall disqualify himself . . . in any proceeding in which that military judge's impartiality might reasonably be questioned.' "[26] The importance of a military judge being and appearing to be impartial cannot be understated. As the CAAF noted, "military judges serve as the independent check on the integrity of the court-martial process. The validity of this system depends on the impartiality of military judges in fact and in appearance."[27]

Subsequently, this Court granted the petition for a writ of mandamus in *Brown v. United States,* when the military judge *sua sponte* denied oral argument on three potentially case-dispositive post-trial motions following a contentious *voir dire* session. In doing so, we noted that

> [I]t is difficult to square the military judge's duty to ensure fairness—both actual and the appearance thereof—with the judge's decision to deny oral argument, in toto, on potentially case-dispositive issues the Defense had fought hard to be able to present and regarding which the convening authority desired further review. In light of the requirements of R.C.M. 905, the military judge's choice to deny all oral argument and abruptly end the hearing, following his denial of the recusal motion, was 'conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned.'[28]

In *United States v. Jones,* the CAAF considered the impact of a member of this Court having previously served as the director of the Appellate Government Division while the appellant's case was pending review but before the appellant filed his assignments of error and brief.[29] There, the judge in question provided an affidavit stating that he "had no involvement" with the appellant's case prior to joining this Court.[30] In declining to grant relief, the CAAF declined to apply the concept of a vertical imputation of conflict to supervisory counsel in that case and instead required that in order to be disqualified as an

---

[26] 71 M.J. 416, 418 (C.A.A.F. 2012).

[27] *Id.* at 418–19.

[28] 79 M.J. at 848 (quoting *Hasan,* 71 M.J. at 418).

[29] 55 M.J. 317 (C.A.A.F. 2001).

[30] *Id.* at 319.

appellate military judge, the judge must have had "actual prior involvement" in the case while serving as the director of Appellate Government.[31]

### 2. Analysis

We find, under the unique circumstances of this case, that Petitioner has met the high burden for the issuance of the writ. We base our conclusion on several factors. While the Government's acquiescence in its response to our show cause order is persuasive and informs our finding that the military judge's "impartiality might reasonably be questioned,"[32] it is not dispositive on our findings.

We instead base our decision on the entirety of the record. In this instance, we conclude that a fully-informed member of the public might reasonably question the military judge's impartiality. We so conclude primarily based upon the claims of VLC that the military judge was privy to matters covered by the attorney-client privilege, coupled with the military judge's actions in sealing Appellate Exhibit IV and immediately halting TDC's voir dire following VLC's claim of a privilege at the trial level.

Because a reasonable member of the public could believe that there is an appearance of partiality created by the military judge's actions and VLC in this case, we need not decide whether the military judge was actually privy to attorney-client confidences or participated in representing Sgt L.B. in this case. Although the military judge repeatedly stated that her involvement in the case was limited, that she did not know Petitioner's name, and that she disclosed her knowledge of Petitioner's case out of an abundance of caution, a reasonable member of the public might harbor doubts about her impartiality. The fact that the military judge identified and then sealed an email exchange in which she provided legal research on an issue likely to be litigated in this case, coupled with her decision to stop TDC from asking her about her involvement as Chief VLC after an assertion of privilege by Sgt L.B.'s VLC was likely enough to meet this standard. Given VLC's persistence before this Court in claiming that the military judge's communications about this case with members of the VLC Organization are privileged and cannot be disclosed, we find that Petitioner has met his burden. We therefore grant the petition.

---

[31] *Id.* at 320.

[32] R.C.M. 902(a).

### III. CONCLUSION

The petition for extraordinary relief in the form of a writ of mandamus disqualifying the military judge is **GRANTED.** The Stay of Proceedings is **LIFTED**. The case is returned to the Chief Trial Judge, Navy-Marine Corps Trial Judiciary, for further proceedings not inconsistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court